**Patrick S. O'HARA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3-91-029-CR.**

Court of Appeals of Texas,
Austin.

Jan. 29, 1992.

Rehearing Overruled March 25, 1992.

Paul A. Finley, Reagan, Burrus, Dierksen, Lamon & Bluntzer, P.C., New Braunfels, for appellant.

Bill M. Reimer, Dist. Atty., Robert H. Fisher, Asst. Dist. Atty., New Braunfels, for appellee.

Before CARROLL, C.J., and ABOUSSIE and KIDD, JJ.

CARROLL, Chief Justice.

Patrick O'Hara was convicted in district court of three counts of aggravated sexual assault of a child. Tex.Penal Code Ann. § 22.021 (1989). The jury assessed punish-

ment and the trial court sentenced O'Hara to fifty years, fifty years, and seventy-five years imprisonment on the three respective counts. We affirm the trial court judgment as to counts one and three of the indictment, and reverse the trial-court judgment as to count two.

## BACKGROUND

In July 1988, Henry M., an eleven-year-old boy whose parents are divorced, went to live with his father in Garden Ridge, Texas. There Henry met Patrick O'Hara, the appellant and a friend of Harold M., Henry's father. Through O'Hara's friendship with Harold, O'Hara had frequent contact with Henry, and the record reflects that O'Hara first attempted to sexually assault Henry during the 1988 Labor Day weekend. From that point, O'Hara began a pattern of sexual advances toward Henry that lasted until Henry was hospitalized for emotional problems in early September 1989.

Henry returned to live with his mother after a month-long stay in the hospital. At that time he confided to his mother that O'Hara had sexually assaulted him a number of times between July 1988 and August 1989. This led to a police investigation, and O'Hara's eventual arrest and conviction.

## DISCUSSION

A. Insufficient Evidence.

In his first, second, and third points of error, O'Hara contends that there was legally-insufficient evidence to show he committed the sexual acts alleged in the three counts of the indictment. The first and second counts of the indictment alleged that on or about December 23, 1988 and June 5, 1989, O'Hara caused Henry's sexual organ to penetrate O'Hara's mouth. The third count of the indictment alleged that on or about August 31, 1989, O'Hara penetrated Henry's anus with O'Hara's sexual organ.

The elements of aggravated sexual assault relevant to this cause are: a person; intentionally or knowingly; causes the sex-

ual organ of a child to contact or penetrate the mouth, anus or sexual organ of another person, including the actor; or causes the anus of a child to contact the mouth, anus or sexual organ of another person, including the actor; and the victim is younger than fourteen years of age. Tex.Penal Code Ann. § 22.021 (1989). For the State to obtain a conviction on each count, the State must prove every necessary element of the alleged offenses. In this case, O'Hara contends there is no evidence of sexual contact or penetration.

Henry testified at trial regarding all three instances of sexual assault. He stated that on December 23, 1988, O'Hara told him to take off his clothes and that O'Hara "started playing with my privates" and "put his mouth on my privates." Henry also testified that on June 5, 1989, he spent the night at O'Hara's trailer and that O'Hara "pulled down my underwear and put his mouth on my privates." Finally, Henry testified that on August 31, 1989, O'Hara "pulled down my underwear and stuck himself into my rear end" and that O'Hara then "pulled his privates out of me."

O'Hara asserts that there is no showing that O'Hara placed his mouth on Henry's sexual organ on either December 23, 1988, or June 5, 1989. O'Hara also argues that the evidence does not support the allegation that he penetrated Henry's anus on August 31, 1989. He argues that because Henry did not define or describe the word "privates," one must speculate about the meaning of Henry's testimony. O'Hara further contends that Henry's testimony does not show that O'Hara actually *penetrated* Henry's mouth or anus with his sexual organ. Finally, he argues that medical evidence should have been introduced at trial that would have supported Henry's testimony regarding anal penetration. O'Hara thus concludes that Henry's testimony does not provide sufficient evidence from which a rational trier of fact could have found the elements of these three alleged crimes beyond a reasonable doubt.

■ In a sexual assault case, even if the victim is a child, the victim's testimony

alone is sufficient evidence of penetration to support a conviction. *Villanueva v. State*, 703 S.W.2d 244, 245 (Tex.App.1985, no pet.). Moreover, in examining the testimony of a child, the courts have kept in mind the child's lack of technical knowledge in accurately describing the parts of the body. *See Clark v. State*, 558 S.W.2d 887, 889 (Tex.Crim.App.1977); *Chase v. State*, 750 S.W.2d 41, 44 (Tex.App.1988, pet. ref'd); *Bryant v. State*, 685 S.W.2d 472, 474 (Tex.App.1985, pet. ref'd). In the instant case, although Henry used unsophisticated language, he testified unequivocally that O'Hara committed the offenses charged in the indictment. In addition to Henry's testimony, Graciela Clarke, a New Braunfels counselor, recounted her interview with Henry from which she concluded that he had been sexually abused.

■ When reviewing a challenge to the legal sufficiency of the evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the conviction, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989). We believe Henry's testimony sufficiently described sexual contact and penetration. Thus, in viewing Henry's testimony in the light most favorable to the verdict, we hold that there is sufficient evidence of the sexual acts alleged in the indictment to sustain O'Hara's convictions. Accordingly, we overrule O'Hara's first three points of error.

### B. Joinder of Offenses.

■ In his fourth point of error, O'Hara asserts that the State violated the joinder rule by putting three separate offenses of sexual assault within one indictment. Thus, O'Hara contends that this court can only uphold one of his three convictions.

The Code of Criminal Procedure provides that "two or more offenses may be joined in a single indictment, information, or complaint, with each offense stated in a separate count, if the offenses arise out of the same criminal episode, as defined in Chapter 3 of the Penal Code." Tex.Code Crim. Proc.Ann. art. 21.24 (1989). That chapter defines "criminal episode" as:

> The commission of two or more offenses, regardless of whether the harm is directed toward or inflicted upon more than one person or item of property, under the following circumstances:
> (1) the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan; or
> (2) the offenses are repeated commission of the same or similar offenses.

Tex.Penal Code Ann. § 3.01 (Supp.1992).

The indictment in this cause charges O'Hara with three separate counts of sexual assault upon Henry. The record reflects that O'Hara made a series of sexual advances toward Henry over a period of a year and succeeded in sexually assaulting him on three occasions. We believe these three instances constitute a "repeated commission of the same or similar offenses" and therefore conclude that the State properly joined the three offenses in the same indictment. We overrule this point of error.

### C. Venue.

In his fifth point of error, O'Hara seeks to reverse the second count of his conviction on the ground that the record affirmatively disproves the State's allegation of venue. The second count of the indictment charged O'Hara with committing aggravated sexual assault in Comal County on June 5, 1989.

Henry testified at trial that the sexual assault of June 5, 1989, occurred when Henry and his father spent the night at O'Hara's home. O'Hara's sister, Charlyn Finger, testified at trial that she resides with O'Hara at 16720 IH 35 North, Lot #29 in Schertz, Texas, which is located in Guadalupe County. Harold Miller likewise testified that O'Hara's home is located in Guadalupe County. Finally, the manager of the trailer park where O'Hara resides testi-

fied that O'Hara had been a tenant at the trailer park for approximately four years.

Rule 80 of the Rules of Appellate Procedure provides that the court of appeals "shall presume that venue was proved in the court below ... unless such matters were made an issue in the court below, or it otherwise *affirmatively appears to the contrary from the record.*" Tex.R.App. P.Ann. 80(d) (Pamph.1991) (emphasis added). The phrase "or it otherwise affirmatively appears to the contrary from the record" means "affirmative and conclusive proof in the record that the venue of prosecution was improperly laid." *Holdridge v. State,* 684 S.W.2d 766, 767 (Tex.App.1984), *aff'd,* 707 S.W.2d 18 (Tex.Crim.App.1986).

■ Venue must be proved as alleged. *Black v. State,* 645 S.W.2d 789, 790 (Tex. Crim.App.1983). The evidence in this case established that O'Hara's home, the situs of the second offense, is located in Guadalupe County, whereas the indictment alleged that the second offense occurred in Comal County. Failure to prove venue in the county of prosecution constitutes reversible error. *See id.* at 791; *Romay v. State,* 442 S.W.2d 399, 400 (Tex.Crim.App. 1969). *See also* Tex.R.App.P.Ann. 81(b)(2) (Pamph.1991). Accordingly, we must reverse and dismiss O'Hara's conviction on the second count of the indictment. Following this dismissal, the State is of course free to seek an indictment against O'Hara in the proper county.

D. Ineffective Assistance of Counsel.

■ In his sixth and seventh points of error, O'Hara claims that his convictions should be reversed because he received ineffective assistance of counsel. To prevail on his ineffective assistance claim, O'Hara must show: (1) that counsel's performance was deficient, in that counsel made such serious errors that he was not functioning effectively as counsel; and (2) the deficient performance prejudiced the defense to such a degree that appellant was deprived of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex.Crim.App.1986).

■ In deciding an ineffectiveness claim, this court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct. The court must then determine whether, in light of all the circumstances, the identified acts or omissions are outside the wide range of professionally competent assistance. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. "Prejudice" is demonstrated when the convicted defendant shows that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.* at 694, 104 S.Ct. at 2068; *Ex parte Guzmon,* 730 S.W.2d 724, 733 (Tex.Crim.App.1987).

■ It is O'Hara's burden to prove an ineffective assistance claim. *Moore v. State,* 694 S.W.2d 528, 531 (Tex.Crim.App. 1985). He must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. In his sixth point of error, O'Hara argues that he received ineffective assistance of counsel because his trial attorney failed to properly summon witnesses to testify in his defense. He identifies five instances in which he claims trial counsel improperly failed to call defense witnesses.

■ O'Hara complains that trial counsel failed to call Dr. Cary Leverett as a witness to give a medical opinion that O'Hara was unable to have an erection. Thus, O'Hara contends that trial counsel left out important evidence proving that he had no motive for committing the charged offenses. O'Hara does not contend, however, that his trial counsel failed to seek out and interview Dr. Leverett or otherwise pursue a defense on O'Hara's behalf.

The record reflects that before trial, O'Hara's counsel filed a motion to dismiss on the basis that it was physically impossible for O'Hara to commit the acts charged against him. Attached to the motion was a

letter from Dr. Leverett which stated in relevant part:

> [O'Hara] states that he has never had intercourse and that since the age of eleven or twelve anytime he obtained an erection it was very painful. Based on this statement we did a three day testing called a Dacomed Snap Gauge that checks for rapid eye movement erections during sleep. Mr. O'Hara was only able to snap the weakest portion of the gauge which *suggests inability to make penetration* .... If I were to place this man under a diagnosis I would basically state that he has organic erectile impotence secondary to lymphatic leukemia.

(emphasis added).

Although this letter indicates Dr. Leverett's probable testimony if he had been called to the stand in O'Hara's defense, it does not demonstrate that Dr. Leverett could have proved that O'Hara was unable to commit the charged offenses. We note that O'Hara's alleged impotence has no bearing whatsoever on two of the charged offenses, which *require proof that Henry's sexual organ penetrated O'Hara's mouth.*

Moreover, the record reflects that O'Hara's counsel had subpoenaed Dr. Leverett to testify, but that events developed during trial that may have caused him not to call Dr. Leverett to the stand. During a hearing on a motion to suppress evidence, the State presented evidence on voir dire that police had seized a vibrator, condoms, baby oil, and handcuffs during a warrantless search of O'Hara's home. The judge ruled that the search was made lawfully with the consent of Charlyn Finger, a person who had possession of the premises and standing to give consent to search. The judge then ruled that evidence of the vibrator and condoms was admissible at trial in the event that counsel asserted the issue of O'Hara's impotence or ability to have an erection. Thus, had Dr. Leverett been called as a witness, the prosecution would have been free to bring this damaging evidence to the jury. These circumstances indicate to us that trial counsel's decision not to call Dr. Leverett as a wit-

ness was based on trial strategy, rather than an omission that reflected the lack of reasonable professional judgment.

O'Hara also complains in this point of error that trial counsel improperly failed to call the following witnesses: (1) a physician who had medically examined Henry and could not verify that anal penetration actually had occurred; (2) another physician who could have testified about Henry's mental condition and thus could have damaged Henry's credibility as a witness; and (3) a witness to testify that Henry was hospitalized on August 31, 1989, the date of the third offense. Finally, O'Hara complains that his attorney made him sign a paper stating that he would not testify at trial, and that had he been allowed to take the stand, he would have testified that Henry's parents had molested Henry.

Beyond assertions in his brief, O'Hara's contentions lack supporting proof. Counsel's failure to call witnesses at the guilt-innocence stage of a trial is irrelevant absent a showing that the witnesses were available and that the appellant would have benefitted from the presentation of their testimony. *King v. State,* 649 S.W.2d 42, 44 (Tex.Crim.App. 1983); *Hunnicutt v. State,* 531 S.W.2d 618, 625 (Tex.Crim.App.1976). Here, the record reflects neither the names of these three potential witnesses nor their abilities to testify about these matters. The record also contains no proof that Henry had been molested by his parents. Finally, the record contains no evidence of a document which would have prevented O'Hara from taking the stand in his own defense.

Before counsel can present a point of error on appeal that is grounded on facts not otherwise shown on the record, counsel should adduce such facts in a motion for new trial. Tex.R.App.P.Ann. 30 (Pamph 1991). Here, O'Hara's counsel filed no motion for new trial before this appeal. Accordingly, we have no basis from which to determine whether O'Hara's trial counsel rendered ineffective assistance by failing to call these witnesses in O'Hara's defense.

In his seventh point of error, O'Hara argues that he was denied effective assis-

tance of counsel because his trial counsel failed to object to a series of extraneous acts that resulted in admission of prejudicial evidence. Specifically, O'Hara complains that trial counsel failed to object to Henry's testimony regarding three different sexual advances O'Hara allegedly made toward Henry.

The State elicited the following testimony regarding the first time O'Hara attempted to assault Henry:

Q: What did Pat O'Hara say to you?

A: He told me to take my clothes off.

Q: And what did he do then?

A: He told me—he made me bend over on my bed and put my hands down on it.

Q: What did he do after that?

A: He tried to stick himself in me and I wouldn't let him.

Henry then testified that O'Hara again attempted to sexually assault him a few weeks later:

Q: Did Pat O'Hara try to do anything to you when you-all went swimming?

A: Yes.

Q: And what did he do or try to do?

A: He tried to stick his privates in my rear again.

Henry also testified that O'Hara made advances to him during a trip to San Antonio:

Q: Did Pat O'Hara ever try to do anything to you when you went to San Antonio?

A: When I was in the hot tub he'd get in the hot tub with me and be trying to pull down my shorts or something.

O'Hara argues that the testimony of these extraneous acts might well have affected the outcome and influenced the fundamental fairness of the trial.

██ An accused may not be tried for a collateral crime or for being a criminal generally. *Williams v. State*, 662 S.W.2d 344, 346 (Tex.Crim.App.1983). This general rule prevents admission of extraneous offense evidence unless an exception to the rule applies. *Meyers v. State*, 737 S.W.2d 6, 9 (Tex.App.1987, no pet.). In Texas, courts have long recognized a narrow exception for admission of evidence of similar extraneous sexual offenses or acts between a defendant and a minor complainant. *Boutwell v. State*, 719 S.W.2d 164, 178 (Tex.Crim.App.1985). In such cases, evidence of extraneous sexual acts is admissible where the extraneous acts are relevant to a material issue or can help to explain the circumstances of the charged act by placing it in the proper context of the relationship between the minor and the adult. *Id.* at 178–79.

██ Even if trial counsel had objected to Miller's testimony of extraneous offenses, we believe the testimony would have been admissible under the narrow exception set forth in *Boutwell*. Not only does this evidence explain the context in which the charged offenses arose, but it may also be viewed as evidence of a common scheme or plan to sexually assault Henry. *Id.* at 180–81. We therefore cannot say that trial counsel rendered ineffective assistance by failing to object to a series of extraneous acts which were properly admissible at trial.

██ Counsel is strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. Here, the record reflects that O'Hara's trial counsel called six character witnesses to testify in O'Hara's defense, attempted to have this cause dismissed before trial on the basis of physical impossibility to commit the crime, and attempted at trial to suppress evidence damaging to O'Hara. By contrast, reasonable explanations exist for counsel's failure to call Dr. Leverett as a witness or object to the extraneous evidence admitted at trial. Looking at the totality of the circumstances at the time of counsel's conduct, we cannot say that counsel acted outside the range of professionally competent assistance in defending O'Hara. Because O'Hara has not met his burden of proof to show ineffective assistance of counsel, we overrule his sixth and seventh points of error.

E. Jurisdiction.

In his eighth point of error, O'Hara argues that this court should reverse the judgment against him because the police officers who arrested him were operating outside of their jurisdictions.

Steven Starr, a police officer with the City of Schertz, and Parus Dudley, the Garden City Chief of Police, testified that they were the officers who arrested O'Hara in December 1989. These officers, along with two others, first went to O'Hara's home in Schertz, which they searched with the consent of O'Hara's sister. After finding that O'Hara was not at home, Starr and Dudley went to O'Hara's place of business in San Antonio and arrested him there. The officers then took O'Hara to the justice of the peace in Universal City, where he was read his Miranda warnings, then to the Schertz police department for processing, and finally to the Comal County jail.

O'Hara asserts that the officers were operating outside of their jurisdictions when they arrested him in San Antonio, which is in Bexar County. However, the Code of Criminal Procedure provides the following with respect to arrest warrants:

> A warrant of arrest, issued by any county or district clerk, or by any magistrate (except mayors of an incorporated city or town), shall extend to any part of the State; and *any peace officer* to whom said warrant is directed, or into whose hands the same has been transferred, *shall be authorized to execute the same in any county in this State.*

Tex.Code Crim.Proc.Ann. art. 15.06 (Supp. 1992) (emphasis added).

In this case, Dudley had an arrest warrant signed by Judge Phillips of Garden Ridge. Article 15.06 plainly states that any peace officer to whom a warrant is directed or has been transferred may execute the warrant in any county in the state. In *Christopher v. State*, 489 S.W.2d 575, 577 (Tex.Crim.App.1973), the court of criminal appeals, citing article 15.06, concluded that a Menard County sheriff acted lawfully when he searched for and arrested a person in Tom Green County.

A city police officer is a peace officer. *Green v. State*, 490 S.W.2d 826, 827 (Tex. Crim.App.1973). We thus conclude that Officer Dudley did not act outside of his jurisdiction in arresting O'Hara in San Antonio. We overrule this point of error.

### DISPOSITION

We affirm the trial court judgment as to counts one and three of O'Hara's conviction. We reverse the trial-court judgment as to count two, and order that count two of the indictment be dismissed.