IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-409-CR





WILLIE WILLIAMS,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT



NO. 0920575, HONORABLE JON N. WISSER, JUDGE PRESIDING



 





 A jury convicted appellant of possessing less than 28 grams of cocaine. Tex.
Health & Safety Code Ann. §§ 481.102(3)(D), 481.115(a) (West 1992). The punishment, which
was enhanced by a prior felony conviction, was assessed by the trial court at confinement for
fifteen years. Tex. Health & Safety Code Ann. § 481.115(b) (West 1992); Tex. Penal Code Ann.
§§ 12.32, 12.42(b) (West 1974). Appellant appeals, asserting three points of error; his principal
complaint is that he received ineffective assistance of trial counsel. We will affirm the judgment.

 We will summarize the State's case in chief. At about 5:00 p.m. on January 20,
1992, City of Austin police officers Sergeant Manuel Fuentes and John Como, who were not in
uniform, were returning to the police station from an assignment in East Austin. Officer Como
was driving an unmarked rental car and Sergeant Fuentes was riding in the front passenger seat. 
While driving west on 12th Street, Como made a right turn onto Chicon Street. Both officers saw
two men one of whom was appellant, standing in an alleyway between two buildings. The men
appeared to be having a conversation and appellant was looking into a white paper sack he was
holding. Como pulled the car into the curb and stopped. The officers, who had several years of
experience investigating narcotics transactions, believed the men they were observing were
engaged in a narcotics transaction. Fuentes made eye contact with appellant and motioned,
indicating he was a customer. Fuentes then turned toward Como and said: "You think we are
going to make a buy here?" Como, who saw appellant crumple the sack in his left hand and drop
it to the ground, replied, "No. He just ditched it" (meaning that appellant had dropped the sack
he had been holding). Fuentes turned toward the two men, saw the paper sack on the ground, and
saw the men starting to walk away in opposite directions. The officers jumped out of their car
and Fuentes asked appellant to stop; he complied with that request. Como retrieved the white
sack, and upon examining its contents saw two small plastic baggies containing white powder
which he believed was cocaine. Como told Fuentes what he had found, and Fuentes arrested
appellant. Appellant had no drugs on his person when he was arrested. The officers did not
detain the other unidentified man they had seen talking with appellant. Appellant was taken to the
police station, photographed and booked. In addition to the officers' testimony, a chemist testified
that the white powder in the baggies recovered by the officers was cocaine.

 In his defense, appellant offered the testimony of a citizen familiar with the area
where appellant was arrested. This witness testified that there was a third exit to the alleyway
where appellant was arrested. The witness also testified that when a single can of beer is
purchased in that part of the city it is generally placed in a small brown sack, but the liquor store
where appellant said he purchased his beer uses white paper sacks.

 Appellant testified in his own behalf. His version of the facts was quite different
from that of the officers. Essentially, his testimony was that the officers were mistaken, because
he had not, but someone else had, dropped the white sack which they picked up. Appellant, who
worked as a day laborer, testified that earlier in the day he was arrested he obtained a voucher
from Industrial Labor Service for work the day before. He cashed the $7.50 voucher at a liquor
store and walked to the area where he was arrested. He went to this area to wait for his uncle,
a "whimsical character" who some people thought "crazy" and would describe as a "street person"
and who did odd jobs in the neighborhood. The uncle and appellant usually ate supper together
and walked to the Salvation Army shelter to stay for the night. On this day, while waiting for his
uncle, he purchased a can of Pabst Blue Ribbon beer. He "hadn't had a Pabst Blue Ribbon beer
since he left Louisiana." The can of beer was placed in a white paper sack. Appellant purchased
and drank two more cans of beer while waiting for his uncle. Appellant went to an alleyway,
between the White Swan and Turk's Bar, a secluded place, to drink his beer. He threw the sacks
containing the beer cans in the alleyway where there were other sacks strewn about. As he was
finishing his third beer and urinating, two men entered the alleyway. Although his back was
turned toward them, he heard them, and he had a "good idea" they were "negotiating" for drugs. 
He "peeked" over his shoulder to see that he was not in "harm's way." One of the men said
"there's somebody" and they started to leave the alleyway. Appellant threw down his sack with
the beer can in it.

 A car stopped at the curb and a man, "that later turned out to be a police officer,"
got out and "detained" appellant as he was making his way to the exit. The other two men who
were in the alleyway walked between the officers and left the scene without being detained. 
Appellant got the impression that the officers knew the other two gentlemen because Fuentes
looked at the gentleman in the trench coat and "kind of stepped out of the way" so he could pass
by the officer. The other man, who was wearing a fatigue jacket, walked past Officer Como. 
Appellant said Fuentes placed him against the wall and showed him a substance he claimed was
cocaine. Appellant testified: "I told him I didn't know if it was cocaine or what. I have never
seen it."

 Appellant testified concerning several prior convictions. He said he was guilty of
all of the prior offenses and that he had pled guilty to all of them. However, he was not guilty
of this offense and wanted a jury to hear his defense. He knew that by pleading not guilty before
the jury he risked receiving substantial punishment. He testified that he had been offered a "deal"
which was between 5 and 20 years (actually it was 12 years), but he did not accept that offer
because he was not guilty.

 In cross-examination, appellant was asked why he had not told the officers about
the other two men in the alleyway. He said he did ask Officer Fuentes why they let the other two
men walk away, but the officer gave him "no explanation whatsoever." Appellant's cross-examination continued:



Q. Did you tell him or indicate to either of them that you thought the other two
individuals were the ones who were doing this -- taking part in this drug
transaction?


A. No, sir. I did not.


Q. You didn't tell them that?


A. No, sir. I did not.


Q. But yet you thought it at the time, did you not?


A. Yes, sir. I did. Most definitely.


Q. Why didn't you tell him?


A. I was under arrest for that particular charge myself. I was the only one
arrested for that charge at that time. So, telling him that somebody else
committed it wouldn't have helped me any. He was taking me in for that
charge and I knew I was innocent of that charge.


Q. But you wouldn't think that it would help you if you let them know who the
real culprits were?


A. It would not help me if they weren't in the car, if they weren't going to be
arrested, if they weren't searched. If there wasn't any contraband found on
me, it helped me, I thought.


Q. What? I didn't hear that last statement.


A. I said, there wasn't any contraband on me to say that I had any contraband. 
They didn't stop anybody else. They didn't ask anybody else if they had
contraband. They never searched anybody else.


Q. Well, why didn't you tell them the description of these other two men?


A. No one asked me. Why would I have to tell them when they allowed them to
walk away? They knew what they looked like. Somebody -- two officers
standing there in a four foot alleyway allowed two men to walk out of plain
view from them. They know what they looked like. The onliest reason that
they could not identify me, they had to use a picture to refresh their memory,
is because they could not see me clearly in that alleyway.


Q. Why -- tell me this one more time because I don't understand your answer: 
Why didn't you tell the officers that you thought the other two men there were
the ones taking part in a drug transaction?


A. What good would it do at the particular time? I'm handcuffed in a car on the
way to jail. What do you want me to tell them, stop, turn around and go pick
up those other two that they let go?


Q. So, you just chose not to tell them?


A. Tell them what? What did you want me to tell them?


Q. That the other two people were the ones who had the drugs. You said you --


A. I think Officer Fuentes may have known that already. I really believe that.



 Trial counsel subpoenaed appellant's jail records to show what personal property
he possessed when he was arrested. It was the clothing he was wearing, a driver's license, and
$6.01 in cash.

 In his first point of error, appellant asserts that he was "denied a fair trial because
the prosecutors repeatedly cross-examined appellant and subsequently made argument to the jury
concerning appellant's post-arrest silence in an attempt to directly link the implausibility of
appellant's exculpatory story to appellant's ostensibly inconsistent post-arrest silence." Appellant
directs our attention to the cross-examination of appellant which we have quoted. The record does
not show that appellant was given Miranda warnings. Since there was no trial objection to this
cross-examination, the matter was not preserved for review. The appellant recognizes that no trial
objection was made, but urges the error is fundamental and cites Marin v. State, 851 S.W.2d 275
(Tex. Crim. App. 1993). We are of the opinion that this complaint falls within the third category
of Marin, the "rights of litigants which are to be implemented upon request." Id. at 279. The
cross-examination and jury argument complained of must be preserved for review by a trial
objection; the trial judge should have an opportunity to rule on these matters during trial. Tex.
R. App. P. 52(a). Appellant's first point of error is overruled.

 Appellant's second point of error is that he "was denied a fair trial because the
conduct of trial counsel in failing to object to the prosecutor's cross-examination and jury
argument linking implausibility of appellant's exculpatory story to ostensibly inconsistent post-arrest silence denied appellant the effective assistance of counsel." Appellant's third point of error
is: "The conduct of trial counsel denied appellant the effective assistance of counsel and a fair
trial." In this multifarious point of error, appellate counsel lumps together numerous page
references to matters which are argued cumulatively.

 A convicted defendant's claim that counsel's assistance was so defective as to
require reversal of conviction has two components. First, the defendant must show that counsel's
performance was deficient. This requires showing that counsel made errors so serious that
counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. 
Second, the defendant must show that the deficient performance prejudiced the defense. This
requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial,
a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that
the conviction resulted from a breakdown in the adversary process that renders the result
unreliable. Strickland v. Washington, 466 U.S. 668, 687 (1984). The Strickland test was adopted
in this state in Hernandez v. State, 726 S.W.2d 53 (Tex. Crim. App. 1986); see O'Hara v. State,
837 S.W.2d 139 (Tex. App.--Austin 1992, no pet.).

 A court must indulge a strong presumption that counsel's conduct falls within the
wide range of reasonable professional assistance; that is, the defendant must overcome the
presumption that, under the circumstances, the challenged action might be considered sound trial
strategy. Strickland, 416 U.S. at 689. 

 In any case presenting an ineffectiveness claim, the performance inquiry must be
whether counsel's assistance was reasonable considering all the circumstances. Strickland, 466
U.S. at 688. A court deciding an ineffectiveness claim must judge the reasonableness of counsel's
challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. 
Strickland, 466 U.S. at 690. The burden of proving ineffective assistance of counsel rests upon
the convicted defendant by a preponderance of the evidence. Moore v. State, 694 S.W.2d 528,
531 (Tex. Crim. App. 1985); Haynes v. State, 790 S.W.2d 824, 827 (Tex. App.--Austin 1990,
no pet.). The reasonableness of counsel's actions may be determined or substantially influenced
by defendant's own statements or actions. Counsel's actions are usually based, quite properly,
on informed strategic choices made by the defendant and on information supplied by the
defendant. Strickland, 466 U.S. at 691.

 Appellant argues that since some members of the jury panel stated their abhorrence
and dislike for unlawful drug sales, trial counsel was remiss for not objecting to the officers'
testimony concerning their experience and their belief that appellant, when they first saw him, was
engaged in a drug deal. In view of the facts, it is difficult to understand how such an objection
would have been sustained. An overruled objection may have incurred some disfavor with the
jury in its consideration of appellant's defense. Appellant's defense was that it was someone else
who was dealing drugs and they were responsible for the cocaine the officers found.

 Appellant also contends counsel's ineffectiveness allowed the State to question
appellant about some of the details of the offenses which had resulted in his prior convictions. 
He argues that this constituted improper impeachment and was prejudicial to him. Appellant had
testified that he was guilty of those offenses and explained them, but because he was not guilty
of this offense he would not plead guilty. Consistent with his defense, it may have been better
strategy not to object. It is quite unlikely that such an objection would have been or could have
been properly sustained. Moreover, the trial court's instructions to the jury properly admonished
the jurors that evidence of the prior convictions could only be considered in assessing appellant's
credibility as a witness and not for any other purpose.

 Appellant's strongest contention concerns his cross-examination which has been
quoted. Appellant insists that counsel's failure to object illustrates ineffectiveness. We believe
it is unnecessary and it would be improper to isolate this matter from the rest of the record. It
can be strongly argued that to object to this cross-examination would have been more harmful to
the appellant's overall defense theory than not to object. Moreover, appellant responded to this
cross-examination and protected himself quite well. Considering the overall defense theory,
which was forced on counsel, we are unwilling to fault her and say that her failure to object was
not a reasonable and studied strategy.

 In this case appellant's appellate counsel filed a motion for new trial in which he
alleged appellant's trial counsel was ineffective. However, appellate counsel failed to obtain a
hearing on these matters and failed to develop evidence to show that trial counsel's representation
was faulty. Appellate counsel did not develop evidence, if he could, to show trial counsel's
actions which he faulted were not matters of good trial strategy which she had planned, given the
facts of the case and appellant's desired defense. The burden of proving ineffective assistance of
counsel rests upon the appellant.

 We must look to the overall representation and assistance furnished appellant by
his trial counsel. Appointed trial counsel filed a motion to suppress evidence, which was heard
and denied by the trial court. However, trial counsel used this hearing for pretrial discovery. 
Sergeant Fuentes and Officer Como both testified at the pretrial hearing, and counsel discovered
essentially all of the facts about which they later testified in appellant's jury trial. Counsel filed
a motion to obtain a free copy of the transcript of testimony of the pretrial hearing. The motion
was granted and counsel used this transcription of the testimony in her cross-examination of the
officers during the jury trial. Counsel filed three pretrial motions in limine, presented them to the
trial court, and received a favorable ruling on each motion.

 The record on arraignment shows that trial counsel negotiated a plea bargain with
the State in which the State was willing to recommend punishment of confinement for twelve
years. Appellant, who had several prior convictions for various offenses and who was on
probation at the time of the instant offense, rejected the plea bargain offer and insisted on pleading
not guilty in a jury trial.

 The record reveals that trial counsel conducted an extensive voir dire of the jury
panel. Eight members of the panel were excused for cause. Appellant and the State both used
their ten peremptory strikes, and significantly, there were no double strikes. Although appellant
complains of counsel's performance during jury voir dire, it appears it was consistent and planned
in view of the defense which was later offered.

 The State's case in chief consisted of the testimony of the two officers and the
chemist. Trial counsel made several appropriate objections during the State's witnesses' direct
examination. Her cross-examination of the State's witnesses was calculated to elicit testimony
that, insofar as possible, would coincide and be compatible with defense evidence and theory,
which was to follow. In doing this, counsel obtained the officers' concession that by hindsight
they should have detained the other man who they had seen conversing with the appellant before
appellant's arrest. They could not describe how the other man was dressed. The cross-examination was purposeful in view of appellant's factual defense.

 Trial counsel was faced with a difficult task. This was a "throw-down-case," in
which mature, experienced officers could be expected to testify before the jury as they did in the
pretrial hearing. The appellant had prior convictions for possessing cocaine, aggravated theft, and
bail jumping. Although counsel had worked out what appears to have been a fair and favorable
offer from the State for a plea bargain, appellant rejected the offer out of hand. Appellant insisted
on his innocence. He wanted to tell his version of the facts and rely upon the criminal justice
system for vindication. In earlier times, defense counsel was given more discretion and control
over the presentation of a criminal defense. Now counsel has little choice, if her counsel and
advice do not persuade a defendant of a different and wiser course for his defense, she must go
forward as best she can. She did not make the facts. Quite likely, under counsel's guidance,
appellant, perhaps wisely, elected to have the trial court assess punishment, which after a full jury
trial resulted in little more punishment than the plea bargain offer.

 Justice O'Connor, in Strickland, admonished:



Judicial scrutiny of counsel's performance must be highly deferential. It is all too
tempting for a defendant to second-guess counsel's assistance after conviction or
adverse sentence, and it is all too easy for a court, examining counsel's defense
after it has proved unsuccessful, to conclude that a particular act or omission of
counsel was unreasonable.



Strickland, 466 U.S. at 689. Appellant has failed to show that trial counsel made errors so serious
that she was not functioning as the "counsel" guaranteed appellant by the Sixth Amendment. It
appears that trial counsel's actions were based on intentional strategic choices made by appellant
and on information supplied by appellant. Viewed at the time of trial, and not by hindsight,
counsel's assistance was reasonable considering all circumstances. Appellant has failed to
overcome the strong presumption that counsel's conduct falls within the wide range of reasonable
professional assistance. Points of error two and three are overruled.

 Considering the defensive theory on which it appears appellant insisted, given his
prior criminal record, and the facts and circumstances of the case as shown by the State's
evidence, it appears appointed trial counsel rendered effective assistance. She should not be
faulted by designation of isolated portions of the record not considered in context with appellant's
defensive theory of the case. Appellant's defense may not have worked as well as he would have
liked, but counsel should not be faulted by hindsight analysis. She is more to be commended than
condemned for her efforts in appellant's behalf.

 The judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices Kidd, B. A. Smith and Dally*

Affirmed

Filed: May 4, 1994

Do Not Publish










* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).