# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00448-CR

**Pedro Palomo Lucio, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
## NO. CR-03-028, HONORABLE GARY L. STEEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Pedro Palomo Lucio guilty of attempted sexual assault. *See* Tex. Pen. Code Ann. § 15.01 (West 2003), § 22.011 (West Supp. 2004-05). The district court assessed punishment, enhanced by previous felony convictions, at imprisonment for seventy years. In his sole point of error, appellant contends his trial counsel was ineffective. We will overrule this contention and affirm the conviction.

The complainant, Guadalupe Natal, lived in a San Marcos apartment with her brother, Alex Rodriguez, and their parents. Rodriguez testified that on the morning of November 11, 2002, he noticed that Natal was "beat up"; she had "a busted lip and a bruise on the side of her face." She was crying and appeared to be frightened, but refused to call the police. Rodriguez decided to call the police himself.

Officer Rudy Mesa responded to the call. He found Natal to be "withdrawn, frightened." He noticed bruising on her nose and cheek, and a redness along her scalp. These injuries appeared to be fresh. Natal refused to give a statement or allow Mesa to photograph her. She told Mesa that she did not want to pursue the matter.

Natal testified that she had known appellant for about four years. They had been romantically involved and, in fact, Natal still loved appellant. Natal said that on the night in question, she was walking home when appellant pulled up beside her in his car. Appellant was drunk, and he demanded that Natal get in the car with him. Afraid of what he might do if she refused, Natal got in the car. Appellant drove to a nearby apartment complex and parked in the lot. He ordered Natal to remove her clothes, then removed his own. Natal told appellant she was not interested in sex and tried to get out of the car. Appellant hit her in the face with his hand. Natal grabbed her pants and managed to open the car door. As appellant attempted to restrain her, the two fell from the car. Natal's head hit the pavement, causing the injury to her scalp. Natal ran to her apartment, where she told her brother what had happened. Natal did not want to press charges against appellant because "I loved him and I'm scared of him."

During cross-examination, Natal acknowledged that after this incident, she accompanied appellant to his work on several occasions. Appellant's employer, called by the defense, also testified to this. He added that appellant and Natal appeared to have a "fine" relationship.

In rebuttal, the State called a domestic violence counselor who testified that it is common for a woman who is the victim of domestic abuse to remain in the abusive relationship. She

2

said that it is also common for a domestic violence victim to minimize the extent of the abuse she has suffered and profess her continuing love for the abuser.

Appellant's point of error is based on defense counsel's failure to object to what appellant argues was improper jury argument by the prosecutor. That argument, and the context in which it was made, is as follows:

> Let's talk about the testimony briefly here. Let's talk about Guadalupe Natal. You saw Guadalupe Natal. You heard this morning from Taylor Skaar, the counselor for the women's center who does counseling for women who have been abused. You saw with your own eyes somebody who fit every one of those things Taylor Skaar talked to you about to an absolute "T."

> She was terrified just to walk into this courtroom. It took her even a little while to even get started to answer questions. And even then I suggest to you—I suggest to you strongly that this is a reason why you should believe what she did tell you.

> I suggest to you strongly that she minimized the violence that was perpetrated to her back on November of last year. She told you she still loved Pedro Lucio. She told you, despite what he had done, that [s]he didn't want him to get in trouble.

> She told Officer Mesa that back on November [11th] when he went out there, not because she called, but because her brother, Alex, observing that she had been beaten up with visible injuries to her face and to her head. He called the police. Guadalupe Natal told the officer then—Officer Mesa told you that she told him—[]he told you that she told him, "I don't want to do anything about this case."

> She told you, "I'm only here because the State subpoenaed me to come in here and testify. I don't want to do this." That—those are not comments that would come from somebody who just wanted to come up here, you know, and give you a line of smoke and give you a bunch of lies just in order to get somebody in trouble for some kind of revenge. She wanted no revenge. She wanted not to testify.

> She still to this day—and she told you from the witness stand that she didn't want anything to happen to him. It's a classic example, I submit, of the kinds of things that Taylor Skaar sees in her line of work all the time. It doesn't mean—the fact—in fact, it probably means just the opposite.

3

The fact that [defense counsel] tried to make a big deal about this in his opening comments yesterday that she was back with him a mere week—and maybe less than that—later, that that somehow suggests that either (A), this never happen[ed] at all; or (B), it couldn't possibly have been as bad as she said. I suggest it's just the opposite.

She was back with him for the reason she told you from the witness stand. *I think she was an honest and candid witness.* She wasn't trying to be evasive with anybody. As I said, *in my view*, *if anything*, *she minimized the level of violence that occurred that evening* because, as she said, "I still love the man. I still don't want him to get into trouble."

But she did testify and *she told you the truth*.

(Italics added.) Appellant argues that in the italicized remarks, the prosecutor improperly expressed his personal opinion regarding the complainant's credibility. He contends that counsel was ineffective for failing to object to this.

It is improper to argue that the jury, as trier of fact, should defer to another's assessment of the truthfulness of testimony. *Gardner v. State*, 730 S.W.2d 675, 698 (Tex. Crim. App. 1987). Thus, it is error for the prosecutor to personally vouch for the honesty of a witness or argue that the jury should believe a witness simply because prosecutors or investigators do. *Id*. But in this cause, the prosecutor did not assert that the jury should believe Natal because he did. Instead, he argued that the factors that might cause one to doubt Natal's credibility—her reluctance to testify, her continuing relationship with and protestations of love for appellant—were typical of domestic violence victims. Considering the prosecutor's argument as a whole, his statement that Natal's testimony was truthful was a deduction from the evidence and not merely a personal endorsement of her credibility.

Even if the prosecutor's argument was objectionable, counsel's failure to object does not alone warrant the conclusion that his trial assistance was constitutionally deficient. To prevail on a claim of ineffective assistance of counsel, an appellant must show that counsel made such serious errors that he was not functioning effectively as counsel and that these errors prejudiced the appellant's defense to such a degree that he was deprived of a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 771-72 (Tex. Crim. App. 1999); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986); *and see Moore v. State*, 694 S.W.2d 528, 531 (Tex. Crim. App. 1985); *O'Hara v. State*, 837 S.W.2d 139, 143 (Tex. App.—Austin 1992, pet. ref'd). Counsel's performance must be judged in its totality, rather than by isolating individual errors or omissions. *See Oestrick v. State*, 939 S.W.2d 232, 237 (Tex. App.—Austin 1997, pet. ref'd). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To overcome this presumption, any allegation of ineffectiveness must be firmly founded in the record. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). In most cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Id.*

Appellant did not raise ineffectiveness of counsel in his motion for new trial. Nothing in the record before us reveals counsel's reason for not objecting to the prosecutor's argument. Perhaps counsel believed, as we think a reasonable attorney could, that the prosecutor's remarks were not objectionable. Perhaps counsel believed that objecting would merely draw attention to the

remarks.  In any event, appellant does not overcome the strong presumption that counsel's representation as a whole was within the broad range of reasonable professional assistance.

We overrule appellant's sole point of error and affirm the judgment of conviction.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed:   March 17, 2005

Do Not Publish