In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00019-CR


______________________________







EX PARTE:


CARLTON GREEN








 


On Appeal from the County Court at Law II


Gregg County, Texas


Trial Court No. 1531-H




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Carlton Green appeals the trial court's denial of his application for writ of habeas corpus in
an underlying extradition proceeding. For the reasons set forth below, we affirm the trial court's
judgment. (1)

 The record before us shows Green stands charged by information with five different
misdemeanor and felony offenses in DeSoto Parish, Louisiana. Shortly after his recent arrest in
Gregg County, Texas, police learned Green was wanted by Louisiana as a fugitive regarding those
out-of-state charges. Pursuant to the Uniform Criminal Extradition Act, see generally Tex. Code
Crim. Proc. Ann. art. 51.13 (Vernon 2006), Texas and Louisiana officials began coordinating their
efforts to return Green to Louisiana to face those out-of-state charges.

 Green subsequently filed an application for writ of habeas corpus to challenge these
extradition efforts. See Tex. Code Crim. Proc. Ann. art. 51.13, § 10. The trial court conducted a
hearing on Green's habeas application and, after receiving evidence and considering the arguments
of attorneys for Green and the State of Texas, denied Green's habeas application and approved
Green's extradition. Green now appeals.

 The sole purpose of habeas corpus review of an extradition proceeding "is to test the legality
of  the  extradition  proceedings."  Ex  parte  Geringer,  778  S.W.2d  132,  134  (Tex.
App.--Houston [1st Dist.] 1989, no pet.).

 No demand for the extradition of a person charged with crime in another State
shall be recognized by the Governor unless in writing, alleging . . . that the accused
was present in the demanding State at the time of the commission of the alleged
crime, and that thereafter he fled from the State, and accompanied by a copy of an
indictment found or by information supported by affidavit in the State having
jurisdiction of the crime, or by a copy of an affidavit before a magistrate there,
together with a copy of any warrant which issued thereupon; or by a copy of a
judgment of conviction or of a sentence imposed in execution thereof, together with
a statement by the Executive Authority of the demanding State that the person
claimed has escaped from confinement or has broken the terms of his bail, probation
or parole. The indictment, information, or affidavit made before the magistrate must
substantially charge the person demanded with having committed a crime under the
law of that State . . . .

Tex. Code Crim. Proc. Ann. art. 51.13, § 3. Only four issues may be properly raised in connection
with a habeas challenge to an extradition proceeding: (1) whether the extradition documents are in
order, (2) whether the applicant has been charged with a crime in the demanding state, (3) whether
the applicant is the same person named in the extradition request, and (4) whether the applicant is
a fugitive. State ex rel. Holmes v. Klevenhagen, 819 S.W.2d 539 (Tex. Crim. App. 1991) (citing
Michigan v. Doran, 439 U.S. 282 (1978)).

 On appeal to this Court, Green raises four issues. First, he contends the evidence in this case
fails to affirmatively demonstrate the person in the Gregg County Jail identified as Carlton James
Green is the same Carlton J. Green wanted by the State of Louisiana. Second, he argues the
governor's warrant is not signed. Third, he asserts the letters from the DeSoto Parish, Louisiana,
District Clerk's office are unsigned, and this lack of signatures is fatal. And, finally, Green
complains the record fails to identify the presiding judge of the Eleventh Judicial District Court of
DeSoto Parish, Louisiana, and that such failure should be fatal to these extradition proceedings.

 With respect to Green's first issue, at a bond hearing, the same trial court heard testimony
from Green himself that he had previously been in custody in DeSoto Parish, Louisiana, on the very
charges for which the State of Louisiana now seeks to have him extradited. Green's own testimony
thus affirmatively refutes his contention that the record fails to show he is the same Carlton J. Green
wanted by the State of Louisiana on the underlying criminal charges. Next, we have reviewed the
governors' warrants admitted into evidence; both the Texas and the Louisiana governors' warrants
are signed by the chief executive officers of those states. Next, Article 51.13 of the Texas Code of
Criminal Procedure does not require that a mere letter that accompanies documents from foreign
states be signed; what matters is that the documents actually required by the Uniform Criminal
Extradition Act be signed--and in this case, all the necessary documents appear to bear the
appropriate signatures by the proper state officials. And, finally, we find nothing in Article 51.13
that mandates discrete identification of the current presiding judge of a foreign state's trial court.



 For these reasons, we conclude Green's issues are unsupported by law or fact in this case, and
we, therefore, affirm the trial court's judgment.





 Jack Carter

 Justice 


Date Submitted: March 27, 2008

Date Decided: March 28, 2008


Do Not Publish


1. Because Texas law generally requires judicial review of extradition proceedings be
accomplished within an extremely short time period, we will suspend the Texas Rules of Appellate
Procedure requiring a twenty-one day submission of the case before issuance of our opinion and,
without necessity of a State's brief, consider the issues raised and issue our opinion in this case. See
Tex. R. App. P. 2 (authority of appellate court to suspend appellate rules on court's own motion);
Tex. R. App. P. 39.9 (twenty-one-day notice to parties in advance of submission).


had told
Patricia that he had seen Jones licking Elizabeth's leg. Samuel testified at trial that he had walked
into the bedroom and saw Jones licking Elizabeth's privates. However, Victoria maintained that
Elizabeth had not told her grandmother anything about any sexual contact and that Victoria was the
first adult to whom Elizabeth related the allegations. This was confirmed by both Elizabeth and
Patricia. 

 When Victoria spoke to Elizabeth, Elizabeth told her that the previous two days, at her
grandmother's house, Jones had touched Elizabeth's "middle part." A few days later, Victoria spoke
again to Elizabeth, who then said Jones had, on those same two days, licked her "middle part. "
Elizabeth was taken to an interview with Hamilton (the SANE), who detected no physical trauma
or injuries to the child. Elizabeth told Hamilton that Jones (to whom Elizabeth made reference as
"Frankie") had put his hands in her panties and rubbed the top of her "middle part . . . a few times
before." 

 Based on the testimony of Elizabeth and Victoria, there is clearly enough evidence for a
rational jury to have found the elements required to support Jones's three convictions. The evidence
is legally sufficient to support the verdicts. 

 The only witness called by Jones was Patricia, who said that Elizabeth had related no
allegations of sexual abuse or contact to her and that she did not believe that Jones had done anything
to Elizabeth. We find the evidence to be factually sufficient to support the verdicts. 

 We overrule Jones's third and fourth points of error. 

No Election Was Required by the State

 Jones's first point of error alleges error in the trial court's denial of Jones's request for an
election by the State regarding the offenses for which they would seek a conviction. At the
conclusion of the State's case-in-chief, Jones asked the trial court to require the State to elect which
conduct on which it was relying for a conviction. See Scoggan v. State, 799 S.W.2d 679, 680 n.3
(Tex. Crim. App. 1990) ("When the evidence shows two or more acts of intercourse, each of which
is an offense for which the defendant may be convicted, and the indictment charges only one offense,
the State is required to elect which act it will rely upon to secure a conviction, provided the accused
makes a motion for election."). 

 As Jones emphasizes, Elizabeth offered testimony alleging multiple sexual assaults by Jones. 
However, the State alleged multiple distinct offenses in a single indictment. Specifically, the
indictment alleged that Jones committed indecency with a child by touching Elizabeth's genitals
(count I), sexual assault upon Elizabeth on or about June 6, 2006 (count III), and committed these
same offenses on or about June 5, 2006 (counts II and IV). "[T]hose who commit multiple discrete
assaults against the same victim are liable for separate prosecution and punishment for every
instance of such criminal misconduct." Gutierrez v. State, 8 S.W.3d 739, 747 (Tex. App.--Austin
1999, no pet.) (quoting Vernon v. State, 841 S.W.2d 407, 410 (Tex. Crim. App. 1992)). 

 However, in the instant situation, Jones's indictment alleged four distinct offenses. 
Section 37.07 of the Texas Code of Criminal Procedure states:

 If the charging instrument contains more than one count or if two or more offenses
are consolidated for trial pursuant to Chapter 3 of the Penal Code, the jury shall be
instructed to return a finding of guilty or not guilty in a separate verdict as to each
count and offense submitted to them. 

 

Tex. Code Crim. Proc. Ann. art. 37.07 (Vernon Supp. 2008). The "Chapter 3 of the Penal Code"
to which reference is made in Article 37.07 addresses criminal episodes. More particularly, in
defining criminal episodes, Section 3.01 of the Texas Penal Code specifies that they include
"offenses . . . committed pursuant to the same transaction or pursuant to two or more transactions
that are connected or constitute a common scheme or plan . . . repeated commission of the same or
similar offenses." Tex. Penal Code Ann. § 3.01 (Vernon 2003). Using those definitions, the
offenses alleged here are multiple offenses contained within criminal episodes. Although Jones does
not allege a misjoinder of offenses, we find no error in joining the four allegations in a single
indictment or in a single trial. See Malone v. State, 163 S.W.3d 785, 804 (Tex. App.--Texarkana
2005, pet. ref'd) (applying Section 3.03, Texas Penal Code, governing sentencing for persons
convicted of multiple offenses comprising single criminal episode, where defendant convicted of
aggravated sexual assault, sexual assault, and indecency with a child, all perpetrated upon same
victim); O'Hara v. State, 837 S.W.2d 139, 142 (Tex. App.--Austin 1992, pet. ref'd) (three instances
of sexual assault upon single victim constitute "repeated commission of the same or similar
offenses"; therefore, State properly joined three offenses in same indictment). Because the State was
entitled to seek convictions for all four offenses alleged in the indictment, pursuant to Article 37.07,
Section 1(c), we find Jones was not entitled to force the State to make an election, and therefore, the
trial court did not err. (5) 

 Within his discussion of this point of error, Jones also claims error in the trial court's charge
to the jury. Jones claims that the trial court committed error by including the following in the jury
charge: "It is not required that the prosecution prove guilt beyond all possible doubt; it is required
that the prosecution's proof excludes all 'reasonable doubt' concerning the defendant's guilt." Despite
Jones's having raised a multifarious point of error, (6) in the interest of justice, we will address this
point. The Texas Court of Criminal Appeals addressed the same complaint in Woods v. State. (7) 
There, the Texas Court of Criminal Appeals held that the trial court did not abuse its discretion by
including in the jury's charge language identical to that complained of by Jones. See Woods, 152
S.W.3d at 114-15. 

 We overrule Jones's first point of error. 

State's Outcry Witness

 Jones's second and fifth points of error concern the admission of outcry witness testimony
given by Victoria. See Tex. Code Crim. Proc. Ann. art. 38.072 (Vernon 2005). 

 The State called Victoria as an outcry witness. Victoria testified that on the morning of
June 7, 2006, her mother, Patricia, called her early in the morning and told her she needed to speak
to her children. Victoria responded on the same day and spoke to Elizabeth alone. As summarized
above, Elizabeth told Victoria that at Patricia's house, the previous two days, Jones had touched her
"middle part." A few days after this conversation, Elizabeth told Victoria that on those days, Jones
had also licked her "middle part." Jones's fifth point of error complains that the trial court erred by
deeming Victoria the proper outcry witness and allowing her to testify as such; Jones asserts that
Patricia, the child's grandmother, was the proper outcry witness. 

 A trial court's determination that an outcry statement is admissible under Article 38.072 of
the Texas Code of Criminal Procedure is reviewed under an abuse of discretion standard. Nino v.
State, 223 S.W.3d 749, 752 (Tex. App.--Houston [14th Dist.] 2007, no pet.); see Garcia v. State,
792 S.W.2d 88, 92 (Tex. Crim. App. 1990). "'[A] trial court has broad discretion in determining' the
proper outcry witness." Villanueva v. State, 209 S.W.3d 239, 247 (Tex. App.--Waco 2006, no pet.)
(quoting Garcia, 792 S.W.2d at 92).

 Jones claims the proper outcry witness was Patricia. When they were attending the softball
game (when Samuel had told Patricia that he had seen Jones inappropriately licking Elizabeth),
Patricia asked Elizabeth if Jones had done anything to her; Elizabeth had responded that he had not
and that the child had told her that during the incident her brother described, Jones had only been
removing a Band-Aid from her leg. There is nothing in the record to indicate that the child made
any description of the offense to Patricia; conversely, Victoria's testimony about what was related
to her by Elizabeth is specific, with allegations of what happened and when and where it occurred. 
Jones simply argues on appeal that "the grandmother should have been the outcry witness . . .
because" it was the child's statements to Patricia at the softball game "on June 6th that started all the
subsequent inquiries regarding alleged sexual abuse." The trial court did not abuse its discretion in
allowing Victoria to testify as the outcry witness. 

 Jones's fifth point of error is overruled.

Outcry Testimony and the State's Notice of Outcry Witness

 Jones's second point of error complains that Victoria's testimony as the outcry witness
exceeded the scope of the State's notice to Jones and that it was error for the trial court to have
allowed testimony which went beyond the notice as provided by the State. 

 The State's notice of intent to proffer outcry witness testimony summarized Victoria's
anticipated testimony as follows:

 Jane Doe (pseudonym), told her mother, Victoria Doggett, that the Defendant put his
hand inside of her panties and rubbed her "middle spot," which is Jane Doe's word
for her vagina. . . . . Jane Doe (pseudonym) said that [this] was not the first time,
that the Defendant had rubbed her vagina on other occasions as well.


 . . . .


 Jane Doe (pseudonym) told her mother, Victoria Doggett, that while she was staying
at her Granny's house, the Defendant touched and licked her "middle spot," which is
her word for her vagina. Jane Doe (pseudonym) told Victoria Doggett that this
happened two days in a row, and the second day was the day that her brother had
walked in on them. Jane Doe (pseudonym) also said that the Defendant had licked
and touched her private part the day before. . . . 


We find that the State's notice substantially conforms with the trial testimony ultimately offered by
Victoria. Additionally, Jones offers no authority for his claim that an outcry witness's testimony is
confined by the State's description of said testimony in its notice under Article 38.072 of the Texas
Code of Criminal Procedure. Accordingly, we overrule Jones's second point of error. 

 We affirm the trial court's judgment. 




 Bailey C. Moseley

 Justice


Date Submitted: November 25, 2008

Date Decided: December 10, 2008


Do Not Publish

 

1. Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court
by the Texas Supreme Court pursuant to its docket equalization efforts. See Tex. Gov't Code Ann.
§ 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Twelfth Court
of Appeals and that of this Court on any relevant issue. See Tex. R. App. P. 41.3.
2. Jones's third point of error assails the factual sufficiency of the evidence; his fourth point
of error challenges legal sufficiency. We address legal sufficiency before factual sufficiency. Clewis
v. State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996).
3. We use pseudonyms in this opinion for each of the children mentioned. 
4. Also a pseudonym.
5. To the extent Jones complains about Elizabeth's testimony that he engaged in these acts
many or several times, such evidence was arguably admissible under Tex. Code Crim. Proc. Ann.
art. 38.37 (Vernon Supp. 2008) ("[N]otwithstanding Rules 404 and 405, Texas Rules of Criminal
Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child
who is the victim of the alleged offense shall be admitted for its bearing on relevant matters,
including: (1) the state of mind of the defendant and the child; and (2) the previous and subsequent
relationship between the defendant and the child."). We find the trial court did not abuse its
discretion in admitting this evidence. See Moreno v. State, 858 S.W.2d 453, 463 (Tex. Crim. App.
1993) (rulings on relevance should be left largely to trial court, relying on its own observations and
experience, and will not be reversed absent an abuse of discretion).
6. A point of error that embraces more than one specific ground of error is multifarious. See
Bell v. Tex. Dep't of Crim. Justice-Institutional Div., 962 S.W.2d 156, 157-58 (Tex. App.--Houston
[14th Dist.] 1998, pet. denied). If a point of error is multifarious, we could refuse to review it. See
id. However, we may consider multifarious points of error if we can determine, with reasonable
certainty, the alleged error about which complaint is made. See id.
7. 152 S.W.3d 105 (Tex. Crim. App. 2004).