NUMBER 13-05-737-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG







ELOY OZUNA
, Appellant,


v.



THE STATE OF TEXAS, Appellee.





On appeal from the 206th District Court


of Hidalgo County, Texas.






O P I N I O N



Before Chief Justice Valdez and Justices Yañez and Castillo


Opinion by Justice Castillo



 A jury convicted appellant Eloy Ozuna of aggravated sexual assault of a child (1)
and assessed punishment at ten years' confinement in the Institutional Division of the
Texas Department of Criminal Justice and a $10,000 fine. The incarceration portion
of the sentence was suspended for a term of ten years community supervision. Ozuna
appeals. We affirm.

I. BACKGROUND

 The child, M.G., described as a hyperactive child who communicated by using
short sentences and demonstrating, repeated an outcry statement to his maternal
grandmother, a police officer, and an intake worker with the Texas Child Protective
Services Department. (2) In his outcry, M.G. stated that Ozuna molested him by digital
penetration of the anus. On physical examination of the child, a forensic nurse
examiner did not rule out sexual abuse. 

II. POINTS OF ERROR PRESENTED

 By three points of error, Ozuna argues the following: (1) the trial court abused 

its discretion in finding M.G. competent to testify; (2) he was denied effective
assistance of counsel; and (3) the evidence is legally and factually insufficient to
support the conviction. 

III. SUFFICIENCY OF THE EVIDENCE

 By his third point of error, Ozuna asserts that the evidence was legally and
factually insufficient to prove the essential elements of the offense beyond a
reasonable doubt. In particular, Ozuna maintains that the evidence to prove he caused
his finger to penetrate the anus is so weak that it cannot sustain the finding of guilt. 
He focuses his argument on M.G.'s inability to communicate, his failure to outcry to
the forensic interviewer and the examining nurse, and the absence of physical
evidence. The State responds that M.G.'s testimony alone is sufficient to sustain the
conviction and corroborating evidence adduced at trial as to his outcry also proved the
essential elements of the offense.

A. Legal Sufficiency Standard of Review

 A legal-sufficiency challenge calls on us to review the relevant evidence in the
light most favorable to the verdict, and then determine whether a rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. 
Escamilla v. State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004) (citing Jackson v.
Virginia, 443 U.S. 307, 319 (1979)); Swearingen v. State, 101 S.W.3d 89, 95 (Tex.
Crim. App. 2003) (en banc); Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App.
2000) (en banc). This standard is meant to give "full play to the [jury's] responsibility
fairly" to "draw reasonable inferences from basic facts to ultimate facts." Sanders v.
State, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003) (quoting Jackson, 443 U.S. at
319). We consider all the evidence that sustains the conviction, whether properly or
improperly admitted. Conner v. State, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001)
(citing Garcia v. State, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994) (en banc)). 
Similarly, we consider all the evidence that sustains the conviction, whether submitted
by the prosecution or the defense, in determining the legal sufficiency of the evidence. 
King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc); Cook v. State,
858 S.W.2d 467, 470 (Tex. Crim. App. 1993) (en banc). In this review, we are not
to reevaluate the weight and credibility of the evidence, but rather, we act only to
ensure that the jury reached a rational decision. Muniz v. State, 851 S.W.2d 238,
246 (Tex. Crim. App. 1993) (en banc). 

 The legal sufficiency of the evidence is measured against the elements of the
offense as defined by a hypothetically correct jury charge for the case. (3) Malik v.
State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). This standard of legal
sufficiency ensures that a judgment of acquittal is reserved for those situations in
which there is an actual failure in the State's proof of the crime, rather than a mere
error in the jury charge submitted. Id. We then determine if any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. 
Jackson, 443 U.S. at 319; Johnson, 23 S.W.3d at 7. 

 If we reverse a criminal case for legal insufficiency, we reform the judgment of
conviction to reflect conviction for a lesser offense only if a jury charge on the lesser
offense was either submitted or requested, but denied. Collier v. State, 999 S.W.2d
779, 782 (Tex. Crim. App. 1999). Otherwise, we vacate the judgment of conviction
for legal insufficiency and order a judgment of acquittal. Swearingen, 101 S.W.3d at
95. 

B. Factual Sufficiency Standard and Scope of Review

 A factual-sufficiency review begins with the presumption that the evidence is
legally sufficient under Jackson, 443 U.S. at 319. Conner, 67 S.W.3d at 198;
Wardrip v. State, 56 S.W.3d 588, 591 n.3 (Tex. Crim. App. 2001). This Court
measures the factual sufficiency of the evidence in this case against a hypothetically
correct jury charge. Adi v. State, 94 S.W.3d 124, 131 (Tex. App.-Corpus Christi
2002, pet. ref'd); see Malik, 953 S.W.2d at 240. 

 We are constitutionally empowered to review the judgment of the trial court to
determine the factual sufficiency of the evidence used to establish the elements of the
charged offense. Zuniga v. State, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004);
Johnson, 23 S.W.3d at 6. In determining the factual sufficiency of the elements of
the offense, we view all the evidence neutrally, not through the prism of "the light
most favorable to the prosecution." Johnson, 23 S.W.3d at 6-7 (citing Clewis v.
State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996)). We set aside a finding of guilt
only if it is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust. Johnson, 23 S.W.3d at 7. A clearly wrong and unjust finding of
guilt is "manifestly unjust," "shocks the conscience," or "clearly demonstrates bias." 
Prible v. State, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005) (quoting Santellan v.
State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997)); Rojas v. State, 986 S.W.2d
241, 247 (Tex. Crim. App. 1998). 

 In conducting a factual sufficiency review, we review the fact finder's weighing
of the evidence. Johnson, 23 S.W.3d at 7 (citing Clewis, 922 S.W.2d at 133). We
review the evidence that tends to prove a material disputed fact and compare it with
evidence that tends to disprove it. Johnson, 23 S.W.3d at 7. We are authorized to
disagree with the fact finder's determination. Id. However, we approach a factual-sufficiency review with appropriate deference to avoid substituting our judgment for
that of the fact finder. Id. Our evaluation should not intrude substantially on the fact
finder's role as the sole judge of the weight and credibility given to witness testimony. 
Id. Thus, in performing a factual-sufficiency review, we are mindful that the fact
finder is the exclusive judge of the credibility of witnesses and the weight to be given
testimony. Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Adelman v. State,
828 S.W.2d 418, 423 (Tex. Crim. App. 1992); Butts v. State, 835 S.W.2d 147, 151
(Tex. App.-Corpus Christi 1992, pet. ref'd). 

 The fact finder may believe some witnesses and refuse to believe others. 
Esquivel v. State, 506 S.W.2d 613, 615 (Tex. Crim. App. 1974). It also may accept
portions of a witness's testimony and reject others. Johnson, 23 S.W.3d at 7; Butts,
835 S.W.2d at 151. We always remain aware of the fact finder's role and unique
position, a position we are unable to occupy. Johnson, 23 S.W.3d at 9. 

 Exercise of our authority to disagree with the fact finder's determination is
appropriate only when the record clearly indicates our intervention is necessary to stop
manifest injustice. Id. When an appellant challenges the factual sufficiency of the
elements of the offense, we ask whether "a neutral review of all the evidence . . .
demonstrates that the proof of guilt is so obviously weak as to undermine confidence
in the jury's determination, or the proof of guilt, although adequate if taken alone, is
greatly outweighed by contrary proof." Zuliani v. State, 97 S.W.3d 589, 593-94 (Tex.
Crim. App. 2003) (quoting Johnson, 23 S.W.3d at 11); see Swearingen, 101 S.W.3d
at 97. 

 In conducting a factual sufficiency review in an opinion, we "show our work"
when we consider and address the appellant's main argument for urging insufficiency
of the evidence. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003);
Johnson, 23 S.W.3d at 9; Manning v. State, 112 S.W.3d 740, 747 (Tex. App.-
Houston [14th Dist.] 2003, pet. denied); see Tex. R. App. P. 47.1. This practice
benefits the parties, maintains the integrity of the justice system, and improves
appellate practice. Sims, 99 S.W.3d at 603; Manning, 112 S.W.3d at 747. If we
reverse a criminal case for factual insufficiency, we vacate the judgment of conviction
and remand for a new trial. See Clewis, 922 S.W.2d at 133-34; see also Swearingen,
101 S.W.3d at 97. 

C. Testimony of a Child Sex Abuse Victim

 The testimony of a child sexual abuse victim alone is sufficient to support a
conviction for aggravated sexual assault. Tex. Code Crim. Proc. Ann. art. 38.07
(Vernon 2005); see Garcia v. State, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978).
Courts give wide latitude to testimony given by child victims of sexual abuse. See
Villalon v. State, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (en banc). The
victim's description of what happened to him need not be precise, and he is not
expected to express himself at the same level of sophistication as an adult. Id. A
child victim need not testify to penetration, which the State may prove through
circumstantial evidence. See id. However, the testimony of a child victim alone is
sufficient evidence of penetration to support a conviction. O'Hara v. State, 837
S.W.2d 139, 141-42 (Tex. App.-Austin 1992, pet. ref'd). There is no requirement
that the victim's testimony be corroborated by medical or physical evidence. Garcia,
563 S.W.2d at 928; Kemple v. State, 725 S.W.2d 483, 485 (Tex. App.-Corpus
Christi 1987, no writ). Further, outcry testimony alone can be sufficient to sustain a
conviction for aggravated sexual assault. Rodriguez v. State, 819 S.W.2d 871,
873-74 (Tex. Crim. App. 1991); Kimberlin v. State, 877 S.W.2d 828, 831-32 (Tex.
App.-Fort Worth 1994, pet. ref'd).D. The Elements of Aggravated Sexual Assault of a Child

 The hypothetically correct jury charge against which we measure the legal and
factual sufficiency of the evidence would ask the jury if Ozuna (1) on or about
December 5, 2003, (2) intentionally or knowingly (3) caused penetration of the anus
of M.G., (4) who was then a child under 14 years of age (5) by any means. See Tex.
Pen. Code Ann. § 22.021(a)(1)(B)(I) (Vernon Supp. 2005). 

E. The Evidence at Trial

 Six years old at the time of the offense, M.G. lived with his mother and her
boyfriend, Ozuna. Since the age of three, M.G. spent weekends with his maternal
grandmother, Guadalupe Cantu. On December 6, 2003, during one such visit, Cantu
noticed that M.G. was acting in a manner she described at trial as "different." Cantu
testified that M.G. was "sad and cried" when he explained to her what occurred. 
Pointing to his backside, M.G. told Cantu "it hurts." Cantu testified that M.G.
described he was lying in bed watching cartoons on television when Ozuna molested
him. Pressed during cross-examination as to M.G.'s exact words, Cantu described
M.G.'s outcry as follows:

 [M.G.] put his hand on his backside and with the finger and
showed me [with] the hand . . . he told me . . . that the finger was . . .
put in his butt . . . it was hurting him. And I asked him, who did this to
you? And he told me, you know, Eloy. 


Cantu further testified that M.G. used the word "butt" to denote the rectal area and
the child demonstrated with his left index finger what Ozuna did to him, indicating
digital penetration. Cantu testified that, in 2003, M.G., a hyperactive child, was
having problems with his speech and communicated by using three-word sentences
and demonstrating by using hand signals. She testified she understood what occurred
by what he told her and what he showed her. Cantu further testified that the child did
not soil his underwear before the outcry but did so after. She denied that he suffered
from constipation. 

 The following day, Cantu took M.G. to the police department where they met
with Officer Lance Werster. Officer Werster testified that M.G. was "hyperactive"
during the meeting. Officer Werster testified that the child was able to communicate
what happened to him and lifted his left index finger to show how Ozuna committed
the assault. From his interview with M.G., Officer Werster was able to ascertain what
happened to the child. Officer Werster further testified as follows: 

 Q. When you had a conversation with [M.G.], was he able to verbalize
to you what had happened to him?


 A. With-in short choppy sentences, yes.

 Q. Did his grandmother Ms. Cantu start to intervene and-and get
involved in-in helping him tell you what had-what had happened?


 A. No, ma'am. 

 Q. So it was all what [M.G.] was telling you?

 A. Yes.

As to the offense report he completed after interviewing M.G., Officer Werster
testified that he wrote, "Put it in my butt" within quotation marks "[b]ecause those
are the words from the child. . . . . He actually said those to me." He further
testified that the child demonstrated an action Officer Werster interpreted "as
being--the actual action of using the finger and putting it in the orifice." 

 M.G. was eight years old at the time of trial. He testified that he was lying
watching television while his mother was "outside cleaning." M.G. testified he was
wearing shorts and underwear. When Ozuna touched him, the shorts were at M.G.'s
knees. At trial, M.G. lifted his left index finger (as represented in the record) and
testified that Ozuna "put it . . . in butt" and it "hurt." M.G. further testified that, after
the assault, Ozuna fell asleep. M.G. testified he was afraid to tell his mother and he
was afraid of Ozuna. 

 Andrew Downing, employed with the Texas Department of Child Protective
Services, testified that he met with M.G. on December 8, 2003 at the child's school. 
M.G. was "somewhat agitated" and spoke in "short and choppy responses." He
testified M.G. made an outcry statement and Downing set up a videotaped interview
of the child. 

 Forensic interviewer Rosie Mendoza testified that, on December 8, 2003, she
interviewed M.G. and the interview was videotaped. (4) She described that M.G. was
"extremely hyperactive." She testified she could not engage him because he was
inattentive and not focused. She testified that he did not disclose anything that
happened as to a sexual assault. The following colloquy ensued on direct examination: 

 Q. Is that common in a sexual assault case? 

 A. No, it's not unusual . . . because if a child is abused and doesn't
disclose, . . . it doesn't mean that it didn't happen. 

 

 The videotape shows that M.G. was active during the interview. It also
demonstrates the following colloquy between the forensic interviewer and M.G., who
was six years old at the time:

 Q. [M.G.], I would like to know, what's the reason you came to talk to
me? Has something happened?

 A. Yes.

 Q. What happened? * * * 

 Q. . . . What are the boy's body parts nobody should see or touch?

 A. The body.

 Q. What are the parts nobody should see or touch?

 A. Don't know.

 Q. Okay. Listen, look at me. Which are the parts of the body that we
cover with underwear?


 A. Butt.

 Q. Has somebody touched your butt with-has somebody done something
to your butt? Has somebody looked at your butt?


 A. People.

 Q. Who?

 A. People.

 Q. What people? What happened to your butt?

 A. People see me. 

* * *

 Q. Has somebody seen your butt or done something to your butt?

 A. People [eliminate].

 Q. People do [eliminate]. Yes, people do [eliminate]. Has anything
happened to you?


 A. No. 

 * * *

 Q. [M.G.], if somebody touches you on this part of your body or asks
you to do something, who are you going to tell?


 A. Nobody.

After telling M.G. he should tell if inappropriately touched, Mendoza concluded the
interview without further questioning.

 More than two weeks later, sexual abuse nurse examiner Juana Cantu Cabrera
examined M.G. (5)
 She testified that M.G. was "hyperactive." He would not
communicate with her but did cooperate in the physical examination after an
acquaintance of his in the office assisted. Cabrera testified that her conclusion after
examining M.G. was "probable rectal penetration" due to quick dilatation of the
suspected area which "may suggest sexual abuse." She explained that dilatation is
the rapid opening of the area. She testified that the symptom occurred, "Because the
body's been trained . . . not to get traumatized anymore so just . . . a light touch and
it opens up. The body doesn't want to hurt anymore . . . it's an involuntary response
. . . and it opens up quickly." Cabrera further testified that she had never seen such
dilatation while the patient was placed in the two different positions during the
examination, stating, "In this case, he rapidly dilatated on both positions." 

 On cross-examination, Cabrera testified she could not conclude that sexual
assault occurred. She testified that other factors including constipation and
medication for hyperactivity could cause the physical symptom she found. On re-direct examination, she testified that it is normal not to have physical findings in a
sexual abuse case and explained that trauma to the rectal area heals quickly. M.G.'s mother, Glenda Torres, testified she lived with and was married to
Ozuna. She testified that, at two years old, M.G. was diagnosed as hyperactive and
prescribed Ritalin, but he was not taking the medication in 2003. Torres further
testified that M.G. always had problems communicating. Medical records admitted in
evidence show M.G. has a speech impairment, was on medication for hyperactivity,
and was undergoing speech therapy at the time of trial.

F. Legal Sufficiency Analysis

 Viewed in the light most favorable to the verdict, the evidence shows that three
persons heard M.G.'s outcry. See Escamilla, 143 S.W.3d at 817. The jury heard that
M.G. told his maternal grandmother, the reporting police officer, and the caseworker
that Ozuna used his left index finger to penetrate his "butt." At the trial convened two
years after his outcry, M.G. unequivocally articulated the same description as to what
Ozuna did to him. We conclude that from the evidence a rational jury could have
found beyond a reasonable doubt that Ozuna committed the offense of aggravated
sexual assault of a child by digital penetration of the child's anus. See Tex. Code Crim.
Proc. Ann. art. 38.07; Tex. Pen. Code Ann. § 22.021(a)(1)(B)(i); Garcia, 563 S.W.2d
at 928; Villalon, 791 S.W.2d at 134. We conclude the evidence is legally sufficient
to sustain the conviction.

G. Factual Sufficiency Analysis

 Viewed in a neutral light, the same evidence we conclude is legally sufficient
establishes the essential elements of aggravated sexual assault of a child. Johnson,
23 S.W.3d at 6-7. However, Ozuna argues that evidence contrary to the verdict
renders the evidence factually insufficient to prove digital penetration of the anus. See
Zuniga, 144 S.W.3d at 484-85. He directs us to the testimony of the examining nurse
and the forensic interviewer to show that (1) M.G. did not outcry to them, (2) the
rapid dilatation could be the result of other factors including constipation and side-effects of medication, and (3) M.G. denied to the forensic interviewer that molestation
occurred. We address these in order.

 First, to challenge proof of the essential element of penetration of the anus,
Ozuna maintains that M.G. did not outcry to the nurse examiner and the forensic
interviewer. Even though a child victim need not testify as to penetration, in this case
the jury heard M.G.'s testimony and outcry testimony describing penetration. See
Villalon, 791 S.W.2d at 134 (holding that penetration may be proved by circumstantial
evidence). The cold record before us demonstrates that, even with a speech
impairment as the medical records indicate, M.G. articulated what Ozuna did to him. 
M.G.'s testimony of penetration is sufficient evidence of penetration and not too weak
to undermine confidence in the jury's determination. See Zuliani, 97 S.W.3d at 593-94; O'Hara, 837 S.W.2d at 141-42. By its verdict, the jury accepted M.G.'s
description even if what was observed and heard meant he could not express himself
at the same level of sophistication as an adult. See O'Hara, 837 S.W.2d at 141-42. 

 Both the examining nurse and forensic interviewer described M.G. as
hyperactive and their difficulty communicating with him. As Ozuna argues, M.G. did
not outcry to them. Even so, either M.G.'s testimony or the outcry testimony is
sufficient to sustain the conviction. Rodriguez, 819 S.W.2d at 873-74; Kimberlin, 877
S.W.2d at 831-32. The absence of outcry to the two examining witnesses does not
render the outcry testimony too weak to undermine confidence in the jury's
determination. See Zuliani, 97 S.W.3d at 593-94. 

 Second, Ozuna maintains that testimony of other factors that might cause the
noted rapid dilatation undermine the conclusion that penetration occurred. The
examining nurse testified that other factors including constipation and medication for
hyperactivity could contribute to the physical symptom of penetration, rapid dilatation,
that she observed on M.G. However, there is no requirement that the victim's
testimony be corroborated by medical or physical evidence. Garcia, 563 S.W.2d at
928; Kemple, 725 S.W.2d at 485. Further, M.G.'s grandmother Cantu negated one
of the factors by her testimony that M.G. did not suffer from constipation. Testimony
adduced from M.G.'s mother negated the other factor because, in 2003, he was not
taking medication for hyperactivity. Thus, the record does not contain contrary
evidence to prove that the rapid dilatation was not caused by sexual abuse. 

 Finally, Ozuna maintains that M.G. denied abuse occurred. The forensic
interviewer testified that M.G. denied anything happened to him. However, reviewed
in the proper context, the record shows that M.G.'s response occurred after the
colloquy with the forensic examiner involving "people [eliminating]." The questioned
response occurred in the following context:

 Q. People do [eliminate]. Yes, people do [eliminate]. Has anything
happened to you?

 A. No. 

By the time M.G. responded to the above question, the jury had heard from his
grandmother Cantu that M.G. did not soil his underwear prior to his outcry but did so
after he outcried. Thus, by its verdict the jury could have rationally concluded that
M.G. did not deny sexual abuse when asked if anything happened to him but, rather,
he denied soiling his underwear. 

 In his factual sufficiency challenge, Ozuna focuses on the child's credibility. 
Essentially, Ozuna is asking that we usurp the jury's function. See Johnson, 23
S.W.3d at 7. The jury is the exclusive judge of the credibility of the witnesses and the
weight to be given their testimony. Id. The jury may accept or reject all or part of the
evidence. Id. The jury may also draw reasonable inferences and make reasonable
deductions from the evidence. Id. If there is evidence that establishes guilt beyond
a reasonable doubt and the jury believes that evidence, we may not reverse the
conviction unless it is manifestly unjust. Prible, 175 S.W.3d at 731; Conner, 67
S.W.3d at 198. The jury, as the exclusive judge of the credibility of the witnesses and
the weight to be given testimony, chose to believe M.G. See Tex. Code Crim. Proc.
Ann. art. 38.04; Adelman, 828 S.W.2d at 423; Butts, 835 S.W.2d at 151. We defer
to that decision. See Johnson, 23 S.W.3d at 9. The record does not indicate our
intervention is necessary to stop a manifest injustice. See id. 

 Thus, we conclude that the facts in this case that support legal sufficiency of
the evidence also render the evidence factually sufficient. Ozuna has pointed to no
evidence that would exonerate him of the offense alleged. No evidence exists in the
record which negates M.G.'s outcry and testimony of the abuse. Mere speculation will
not support Ozuna's argument. See Conner, 67 S.W.3d at 198. Accordingly, we
conclude that the verdict was not so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. See Prible, 175 S.W.3d at 731; Conner,
67 S.W.3d at 198. Considering all the evidence in a neutral light, we further conclude
that the jury was rationally justified in finding guilt beyond a reasonable doubt. See
Zuniga, 144 S.W.3d at 484-85; Johnson, 23 S.W.3d at 9. 

 Because we find the evidence both legally and factually sufficient to prove
aggravated sexual assault of a child, we overrule Ozuna's third point of error.

IV. CHILD'S COMPETENCY TO TESTIFY

 By his first point of error, Ozuna asserts that the trial court abused its discretion
by finding M.G. competent to testify. Ozuna argues that the trial court failed to (1)
examine the child more thoroughly about and admonish him of the consequences for
lying under oath, (2) administer a more substantial oath before he testified at trial or
any oath during the pretrial competency hearing, and (3) disallow the testimony
because the child did not know the difference between a truth and a lie and, thus, was
not credible. The State responds that the trial court met all statutory requirements to
establish competency. 

A. Statutory Requirements as to Child Competency

 A child is deemed incompetent to testify if, after being examined by the court,
he appears to lack sufficient intellect to relate transactions with respect to which he
is interrogated. See Tex. R. Evid. 601(a)(2). Thus, rule 601 creates a presumption
that every person is competent to testify regardless of age. Id.; see Reyna v. State,
797 S.W.2d 189, 191-92 (Tex. App.-Corpus Christi 1990, no pet.) (affirming
four-year-old competent to testify about sexual crimes). The rule empowers the trial
court to resort to an examination that would tend to disclose a witness's capacity and
intelligence in order to ascertain whether that witness is competent to testify. See
Broussard v. State, 910 S.W.2d 952, 960 (Tex. Crim. App. 1995); Clark v. State, 659
S.W.2d 53, 55 (Tex. App.-Houston [14th Dist.] 1983, no pet.) (affirming
three-year-old's competency to testify). 

B. Child Competency Standard of Review

 Generally, the competency of a witness is an issue for the trial court; thus, the
trial court's ruling on whether a child is competent to testify will not be disturbed on
appeal absent an abuse of discretion. See Broussard, 910 S.W.2d at 960; Clark v.
State, 558 S.W.2d 887, 890 (Tex. Crim. App. 1977); Reyna, 797 S.W.2d at 191-92. 
However, in order to preserve error for review on appeal, a party must timely and
specifically object to the trial court and secure an adverse ruling. See Tex. R. App. P.
33.1; Turner v. State, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991).

C. Child Competency Analysis

 Assuming without deciding that Ozuna preserved error as to his complaints on
appeal (6) and further assuming that error occurred below, we conclude that Ozuna has
not demonstrated reversible error. See Tex. R. App. P. 44.2(b). Eight years old at the
time of trial, M.G. presented with a diagnosed speech impairment and hyperactivity. 
By the time of trial, he was undergoing speech therapy. Throughout M.G.'s testimony,
he demonstrated a knowledgeable, controlled, and straightforward demeanor in
answering all questions. He answered questions articulately and, because he
answered the questions asked, he understood them. He articulated key details of the
offense that occurred two years before, including that he was wearing shorts and that
Ozuna used the left index finger to perpetrate the offense and slept after the assault. 
M.G. recalled what he told his grandmother Cantu regarding the offense. Cantu's
testimony mirrored the child's recollection of his outcry.

 After reviewing M.G.'s testimony at trial, we have no doubt that he
demonstrated his competency to intelligently observe the events in question at the
time they happened, recollect them, and clearly articulate and narrate them to the trial
court and the jury. Thus, we conclude that Ozuna has not demonstrated prejudice. 
See Tex. R. App. P. 44.2(b). 

 We overrule Ozuna's first point of error.

V. INEFFECTIVE ASSISTANCE OF COUNSEL

 By his second point of error, Ozuna asserts that he was denied his constitutional
right to counsel because his two trial counsel failed to object to four prejudicial
statements. The State responds that trial counsel provided effective assistance of
counsel. 

A. Standard of Review of Ineffectiveness Claims

 A claim of ineffective assistance of counsel must be firmly supported in the
record. McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996) (per
curiam). When determining the validity of a defendant's claim of ineffective assistance
of counsel, we must be highly deferential to trial counsel and avoid the distorting
effects of hindsight. Ingham v. State, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984). 
We presume counsel's performance was the result of sound trial strategy. Strickland
v. Washington, 466 U.S. 668, 688 (1984); Stafford v. State, 813 S.W.2d 503, 506
(Tex. Crim. App. 1991). We will not base a finding of ineffectiveness on speculation. 
Gamble v. State, 916 S.W.2d 92, 93 (Tex. App.-Houston [1st Dist.] 1996, no pet.). 
In the absence of evidence of counsel's reasons for the challenged conduct, an
appellate court will assume a strategic motivation and will not conclude that the
challenged conduct was deficient unless it was so outrageous no competent attorney
would have engaged in it. Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App.
2001); Thompson v. State, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). An appellant
claiming ineffective assistance of counsel must show that: (1) counsel's performance
fell below an objective standard of reasonableness, based on prevailing professional
norms; and (2) there is a reasonable probability, but for counsel's unprofessional
errors, that the result of the proceeding would have been different. McFarland v.
State, 845 S.W.2d 824, 842 (Tex. Crim. App. 1992). 

B. Ineffectiveness Analysis

 In particular, Ozuna complains of the following four unobjected-to statements. 
He acknowledges that his two trial counsel did not preserve error as to the objections. 
 First, in State's exhibit 6, the offending statement is: "The child was asked by
the Victim Liaison, Jessica Ochoa from Mission P.D. if he [M.G.] wanted to go back
home and live with his mom. He state[d], 'Not [sic], because [Ozuna] is there." 
Ozuna argues that trial counsel should have cross-examined M.G. because of
testimony that M.G. was not afraid of anyone. Even so, the jury heard M.G. testify
that he did not tell his mother about the assault because he was afraid of her. Further,
whether cross-examined or not, M.G. did not have a choice to return home. Cantu
testified that, because M.G.'s mother continued living with Ozuna post-arrest, Child
Protective Services intervened and both M.G. and his younger sister were placed with
Cantu. 

 Second, Ozuna states that Officer Werster impermissibly testified as to the
words M.G. used to describe the assault, namely, "Put it in my butt." Ozuna argues
that the statement was hearsay. However, in the proper context, the statement
occurred when the officer was re-called to testify and after Cantu had already testified
as to M.G.'s outcry. Thus, Officer Werster's statement was corroborative of the
outcry already before the jury. 

 Third, Ozuna complains that Cantu impermissibly testified that M.G.'s mother
was going to give M.G. away and never liked the pregnancy. Ozuna argues that the
statements implied M.G. came from an environment that tolerated abuse. However,
the jury heard that M.G. and his three siblings were removed from the household
because his mother continued to live with the perpetrator. Thus, the jury could make
the same complained-of inference from other non-objected to evidence.

 Fourth, Ozuna complains that, during closing argument, the prosecutor
misstated that M.G. verbalized the assault to Downing, the caseworker. On cross-examination, the caseworker acknowledged that M.G. made an outcry to him. By the
time the caseworker testified, M.G.'s mother had already testified as to M.G.'s outcry. 
Viewed in light of the record as a whole, the complained-of argument was a
reasonable deduction drawn from the evidence and thus proper. See Guidry v. State,
9 S.W.3d 133, 154 (Tex. Crim. App. 1999) (holding that proper jury argument
generally must encompass one of four areas including a reasonable deduction drawn
from the evidence); Wilson v. State, 938 S.W.2d 57, 61 (Tex. Crim. App. 1996)
(holding that the argument is considered in light of the record as a whole). 

 We conclude that Ozuna has not met his burden of showing a reasonable
probability that the result of the proceeding would have been different if trial counsel
had objected as claimed. See McFarland, 845 S.W.2d at 842. Thus, he has not
shown he was denied effective assistance of counsel. Id. In any event, Ozuna did not
develop any record of trial counsel's strategy in not objecting to the offending
statements and argument. We decline to speculate. See Garcia, 57 S.W.3d at 440. 
We further conclude that Ozuna did not meet his burden of showing that his trial
counsel's performance fell below an objective standard of reasonableness based on
prevailing professional norms. See McFarland, 845 S.W.2d at 842. 

 Without a record of trial counsel's overall performance and strategic decisions,
we cannot determine if counsel's performance was objectively deficient or if it created
an unnecessarily disadvantageous result. See Jackson v. State, 877 S.W.2d 768, 771
(Tex. Crim. App. 1994). Thus, Ozuna has not rebutted the presumption that he was
adequately represented. (7) See id. 

 We overrule Ozuna's second point of error.

VI. CONCLUSION

 We have overruled each of Ozuna's three points of error on appeal. We affirm
the judgment. 

 ERRLINDA CASTILLO

 Justice

Publish

Tex. R. App. P. 47.2(b).


Opinion delivered and filed this 

10th day of August 2006. 

1. See Tex. Pen. Code Ann. § 22.021(a)(1)(B)(i) (Vernon Supp. 2005). The indictment alleged
that on or about December 5, 2003, Ozuna intentionally and knowingly caused digital penetration of the
anus of M.G., a child. 
2. Ordinarily, the statements that M.G. made to the three individuals would be inadmissible
hearsay at trial. See Tex. R. Evid. 802. However, an "outcry" statement is an exception to the hearsay
rule for the first report of sexual abuse that the victimized child makes to an adult. See Tex. Code Crim.
Proc. Ann. art. 38.072, § 2(a) (Vernon 2005) (applicable in the trial of an adult); Garcia v. State, 792
S.W.2d 88, 93 (Tex. Crim. App. 1990). 
3. A hypothetically correct jury charge is one that accurately sets out the law, is authorized by
the indictment, does not unnecessarily increase the State's burden of proof or restrict its theories of
liability, and adequately describes the particular offense. Malik v. State, 953 S.W.2d 234, 240 (Tex.
Crim. App. 1997); Cano v. State, 3 S.W.3d 99, 105 (Tex. App.-Corpus Christi 1999, pet. ref'd). A
hypothetically correct jury charge does not simply quote from the controlling statute. Gollihar v. State,
46 S.W.3d 243, 254 (Tex. Crim. App. 2001). Its scope is limited by the statutory elements of the
offense as modified by the charging instrument. See Fuller v. State, 73 S.W.3d 250, 254 (Tex. Crim.
App. 2002) (Keller, P.J., concurring) (quoting Curry v. State, 30 S.W.3d 394, 404 (Tex. Crim. App.
2000)). Malik flatly rejects use of the jury charge actually given as a means of measuring sufficiency
of the evidence. See Gollihar, 46 S.W.3d at 252. Malik controls sufficiency of the evidence analysis
even in the absence of alleged jury charge error. Id. at 255.
4. The jury viewed the videotape, which was admitted in evidence. 
5. Cabrera testified she examined M.G. on December 22, 2003. 

6. See Tex. R. App. P. 33.1. Two years after the alleged date of the offense, the trial court
convened an evidentiary pretrial child competency hearing on Ozuna's motion and denied the motion. 
Ozuna did not object as to the absence of any oath during the pretrial hearing before M.G. was
questioned. Similarly, Ozuna did not object when the trial court announced it would administer and did
administer its "modified" oath to M.G. before M.G. testified at trial. Ozuna did not complain that M.G.'s
outcry and testimony at trial demonstrated he lacked sufficient intellect so as to render the child not
credible and his outcry and testimony unreliable. On appeal, Ozuna dismisses M.G.'s behavior and
statements as suspect, and he argues that Cantu's testimony is unreliable. However, because he did
not raise any complaint as to Cantu's testimony to the trial court, he did not preserve error. See Tex.
R. App. P. 33.1. 
7. Further, to the extent that Ozuna argues the cumulative effect of these four claims requires
reversal, we observe that the concept of cumulative error applies to ineffective assistance claims. See
Chamberlain v. State, 998 S.W.2d 230, 238 (Tex. Crim. App. 1988). However, there is no authority
for the proposition that the cumulative effect of non-errors requires reversal. See id.