IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00156-CR

 

Daniel J. Barton,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 241st District Court

Smith County, Texas

Trial Court No. 241-2033-05

 



Opinion



 

      Appellant Daniel J. Barton was convicted of Aggravated Sexual Assault
of a Child and was sentenced to 99 years in prison.  Barton brings four issues
on appeal.  We will affirm the judgment of the trial court.

Sufficiency of the Evidence

      In his first and second issues, Barton challenges the legal and
factual sufficiency of the evidence to establish that he committed the
offense.  Specifically, he argues that the evidence is insufficient because the
alleged victim, H.G., testified that she was not sure Barton assaulted her, and
the State failed to link Barton to the physical evidence.  Further, he argues
that the evidence was insufficient to establish that H.G. was not Barton’s
spouse.

Standard of Review

When reviewing a challenge to the
legal sufficiency of the evidence, we must determine whether, after viewing all
the evidence in the light most favorable to the verdict, any rational trier of
fact could have found the essential elements of the offense beyond a reasonable
doubt.  See Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).  We do not resolve any conflict of fact or assign
credibility to the witnesses, as this was the function of the trier of fact.  See
Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); Adelman v.
State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); Matson v. State,
819 S.W.2d 839, 843 (Tex. Crim. App. 1991).  Inconsistencies in the evidence
are resolved in favor of the verdict.  Curry v. State, 30 S.W.3d 394,
406 (Tex. Crim. App. 2000); Matson, 819 S.W.2d at 843.

The
Court of Criminal Appeals articulated the standard of review for a factual
sufficiency claim in Watson v. State, 204 S.W.3d. 404 (Tex. Crim. App. 2006).  We, as the reviewing court, ask whether a neutral review of all the
evidence, though legally sufficient, demonstrates either that the proof of
guilt is so weak or that conflicting evidence is so strong as to render the
jury's verdict clearly wrong and manifestly unjust.  Watson, 204 S.W.3d at
414-15; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  AThe court reviews
the evidence weighed by the jury that tends to prove the existence of the
elemental fact in dispute and compares it with the evidence that tends to
disprove that fact.@  Johnson, 23 S.W.3d at 7
(quoting Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996)). 
The appellate court Adoes not indulge in inferences or
confine its view to evidence favoring one side of the case.  Rather, it looks
at all the evidence on both sides and then makes a predominantly intuitive
judgment. . . .A  Id. (quoting William Powers and
Jack Ratliff, Another Look at ANo Evidence@ and AInsufficient
Evidence,@  69 Texas L. Rev. 515, 519 (1991)).

The nature of a factual sufficiency review authorizes an appellate
court, although to a very limited degree, to act as the so-called “thirteenth
juror” to review the fact finder=s weighing of
the evidence and disagree with the fact finder=s
determination.  Watson, 204 S.W.3d at 417 (citing Tibbs v. Florida,
457 U.S. 31, 42-3, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982), and Meraz v.
State, 785 S.W.2d 146, 156 (Tex. Crim. App. 1990)).  If an appellate court
concludes that the evidence is factually insufficient, however, it must clearly
state why it has reached that conclusion.  Johnson, 23 S.W.3d at 7
(citing Pool v. Ford Motor Company, 715 S.W.2d 629, 635 (Tex. 1986)).

      Legal
Sufficiency Analysis - Penetration

      Barton was charged with aggravated sexual
assault.  Tex. Pen. Code Ann. §
22.021 (a)(1)(B)(i) (Vernon Supp. 2006).  A person commits this offense if he
intentionally or knowingly causes the penetration of the anus or sexual organ
of a child by any means.  Id.

      H.G. testified that she was twelve years old
at the time of the offense.  She stated that Barton was a guest in her home and
slept on the couch in the living room.  H.G. slept on the couch with him
because she wanted to be near him.  While she was sleeping, Barton put his foot
on her “private area.”  After rubbing her with his foot, he pulled her towards
him and put his hand down her pants.  He put his fingers in her but “not by
much.”  Then, he pulled down his pants and held her hand on his penis. 
Following the incident, H.G. went to the bathroom and then looked at the
clock.  She returned to the living room and lay on a smaller couch, away from
Barton.

      H.G. did not tell her parents about the
incident; however, she wrote a note to her friend Lori in which she stated that
Barton, whom she identified as her cousin, “stuck his hand in [her] pants and
fingered [her].”[1]  She
also told Jacqueline Bryant, Lori’s mother, that Barton rubbed her with his
foot and put his hands down her pants.

      H.G.’s sister, A.H., testified that Barton
“hit on her” and penetrated her with his finger once.  She likewise did not
tell her parents about her encounter with Barton.

      Jolynn, who is H.G. and A.H.’s mother,
testified that Barton was a close friend of her family and that she had not
seen him for several years.  When she heard he was staying in town with a
friend, she invited him to stay with her family several nights over a two-week
period.  She did not learn of H.G.’s allegations against Barton until her
husband discovered a note H.G. wrote to a friend.  After reading the note and
speaking with Kim Waits of Child Protective Services, Jolynn remembered that
the day of the alleged incident H.G. did not return home after school on the
bus and did not call home.  She also recalled that Barton asked for a ride
early that morning although he had planned to stay at her house throughout the
day.  When she told him she would be late to work if she gave him a ride, he
insisted on going with her and said that she could “drop him at the Loop,” which she testified was “a good way from where he was staying.”  Based on these two
events, although Jolynn did not want to believe Barton had assaulted H.G., she
testified that she believed “without question” that he did.

      Kim Waits testified that she interviewed H.G.
at school.  H.G. told her that Barton “stuck his fingers in her private” and
“penetrated [her] vagina with his fingers.”  The jury heard the audio recording
of Waits’s interview with H.G.

      Angela Cabaniss, a Sexual Assault Nurse
Examiner, testified that she examined H.G. who gave her the following statement
about the incident:

I went to sleep on the couch, and [Barton] was
asleep on the other end.  He started putting his foot on my private area.  I
would move, and he would put it back.

 

He sat up and started feeling my private area.  He
laid back down and put me on his knee, and he stuck his hand down my pants and
panties, and he started feeling around my private area.  He put his finger in
my private area.

 

He laid back and pulled his thing out and told me
to hold it.  I didn’t say anything, so he grabbed my hand and squeezed my hand
to it.  We both laid back down.  Then I got up and went to the bathroom and
washed my face.  I then went and laid down on the other couch.

 

Cabaniss’s examination revealed that H.G. had a
“notch” in her hymen that could have been caused by the penetration of her
sexual organ.

      Barton testified and denied assaulting H.G. 
However, he admitted to smoking marihuana the evening of the alleged assault. 
He also admitted to three misdemeanor convictions and attempting to flee from
Detective Anthony Dana when he was arrested.  

Barton points to inconsistencies in
H.G.’s account of the incident.  On cross-examination, H.G. stated that she
believed the event occurred at 5:12 a.m.  However, she indicated that it
occurred at 5:29 a.m. in a note to a friend.  She testified that she went to
her sister’s room once that morning but the note stated she went to her
sister’s room twice.  Barton also suggested that she made inconsistent
statements as to what she was wearing at the time of the alleged assault.

Further, Barton relies on the
following testimony by H.G. to show that she was not sure Barton assaulted her:

I was kind of, you know, a little bit messed up,
you know.  Didn’t know—I didn’t really know what happened—I mean, I knew what
happened, but I didn’t really think it was real that it actually happened, that
he’d do it.

             

The testimony of a child sexual abuse
victim alone is sufficient to support a conviction for aggravated sexual
assault.  Tex. Code Crim. Proc. Ann.
art. 38.07 (Vernon 2005); see Garcia v. State, 563 S.W.2d 925, 928 (Tex.
Crim. App. 1978).  Courts give wide latitude to testimony given by child
victims of sexual abuse.  See Villalon v. State, 791 S.W.2d 130, 134
(Tex. Crim. App. 1990).  The victim's description of what happened to her need
not be precise, and she is not expected to express herself at the same level of
sophistication as an adult.  Id.  A child victim need not testify to
penetration, which the State may prove through circumstantial evidence.  See
id.  However, the testimony of a child victim alone is sufficient evidence
of penetration to support a conviction.  O'Hara v. State, 837 S.W.2d
139, 141-42 (Tex. App.—Austin 1992, pet. ref'd).  There is no requirement that
the victim's testimony be corroborated by medical or physical evidence.  Garcia,
563 S.W.2d at 928; Kemple v. State, 725 S.W.2d 483, 485 (Tex. App.—Corpus
Christi 1987, no pet.).  Further, outcry testimony alone can be sufficient to
sustain a conviction for aggravated sexual assault.  Rodriguez v. State,
819 S.W.2d 871, 873-74 (Tex. Crim. App. 1991); Kimberlin v. State, 877
S.W.2d 828, 831-32 (Tex. App.—Fort Worth 1994, pet. ref'd).

Although there were some
inconsistencies between H.G.’s trial testimony and the notes to her friends, we
give wide latitude to testimony given by child victims of sexual abuse.  See
Villalon, 791 S.W.2d at 134.  H.G. consistently stated that Barton
penetrated her sexual organ with his finger.  This evidence alone is sufficient
to support the conviction.  O’Hara, 837 S.W.2d at 141-42.  We note that
it was not necessary for the State to link the physical or medical evidence to
Barton.  See Garcia, 563 S.W.2d at 928.  Further, although inconsistent,
H.G.’s statement that she “didn’t really think it was real … that he’d do it” must
be resolved in favor of the verdict.  Accordingly, in viewing the evidence in
the light most favorable to the verdict, we find the evidence of penetration
legally sufficient.

Legal Sufficiency Analysis – Spouse 

Barton also argues that the evidence
is legally insufficient to prove that H.G. was not his spouse.  We disagree. 
“Child” is defined as “a person younger than seventeen years of age who is not
the spouse of the actor.”  Tex. Pen.
Code Ann. § 22.011(c)(1) (Vernon  Supp. 2006).  “Spouse” is defined in
the same section as a person who is not “legally married” to another.  Id. § 22.011(c)(2).  Generally, one must be at least eighteen years old in order to
marry, but a person sixteen years or older can marry with parental consent.  Tex. Fam. Code Ann. §§ 2.101, 2.102(a)
(Vernon 2006).

There is no evidence in the record
that H.G. was Barton’s spouse.  The testimony revealed that H.G. was twelve
years old at the time of the offense.  At that age, H.G. could not lawfully
marry, even with parental consent.  Viewing the evidence in the light most
favorable to the verdict, as we must, we conclude a rational trier of fact
could have found beyond a reasonable doubt that H.G. was not the spouse of
appellant as alleged in the indictment.

As we have found the evidence legally
sufficient to prove penetration and that H.G. was not Barton’s spouse, we
overrule his first issue.

Factual Sufficiency Analysis

In his second issue, Barton argues
that the evidence was also factually insufficient to support the verdict. 
Considering all the evidence in a neutral light, we find that the jury was
justified in finding Barton guilty.  Watson, 204 S.W.3d at 415.  H.G.
testified that Barton penetrated her sexual organ with his finger.  Because a
child victim’s testimony of sexual abuse is sufficient to support a conviction
for aggravated sexual assault, we do not find this evidence so weak as to
render the verdict manifestly unjust, nor is any conflicting evidence so strong
that the verdict is clearly wrong and manifestly unjust.  We overrule Barton’s
second issue.

Commitment Question

      In his third issue, Barton argues that the
trial court erred in allowing the State to ask the jury an improper commitment
question during voir dire.  Barton objected to the following question:

Is there anybody out there who says, “You know
what; I understand that, but in any criminal case, even if I believe that you
met each and every one of your elements, I’m going to require more than one
witness before I return a verdict of guilty?”

 

The trial court has broad discretion over the
process of selecting a jury.  Barajas v. State, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002).  Thus, we review the trial court’s ruling for abuse of discretion.  Id.

A voir dire question is a
"commitment question" "if it attempts to commit the juror to a
particular verdict based on particular facts."  Id. (citing Standefer
v. State, 59 S.W.3d 177, 181 (Tex. Crim. App. 2001)).  Not all commitment
questions, however, are improper.  Standefer, 59 S.W.3d at 181.  A
commitment question is improper (1) when the law does not require the
commitment, such that a juror would not be disqualified for cause by being
influenced by a particular fact or by having a particular attitude or opinion,
or (2) even if the question meets the challenge for cause requirement, if it
also includes facts in addition to those necessary to establish a challenge for
cause.  Id. at 182-83.  An improper commitment question attempts to
create a bias or prejudice in the members of the venire panel before they have
heard the evidence, whereas a proper voir dire question attempts to discover a
venireperson's preexisting bias or prejudice.  Sanchez v. State, 165
S.W.3d 707, 712 (Tex. Crim. App. 2005).

In Caldwell, the trial
court granted the State’s challenge for cause against a venireperson who
acknowledged that “under no circumstances would [he] be able to base a guilty
verdict on the testimony of one witness.”  Caldwell v. State, 818
S.W.2d 790, 797 (Tex. Crim. App. 1991).  The Court of Criminal Appeals approved
the challenge for cause because the venireperson “would have held the State to
a higher burden of proof than required by law.”  In Castillo, the Court
clarified that the bare question, “Could you find someone guilty on the testimony
of one witness?,” would not give rise to a valid challenge for cause unless the
State demonstrated that the venireperson’s categorical refusal is predicated
upon something other than his understanding of proof beyond a reasonable
doubt.  Castillo v. State, 913 S.W.2d 529, 534 (Tex. Crim. App. 1995). 
The Court stated that without such proof, "there is no indication the
[venireperson] cannot follow the law, and the State has failed to carry its
burden to show the [venireperson] should be excused."  Id.

We find that the State’s question was
not an improper commitment question.  The question asked the panel whether they
required more than one witness even if they believed the State had met its
burden on all the elements of the offense.  Essentially, the question sought to
determine whether the venirepersons possessed a preexisting bias.  

However, even if the State's question
was an improper commitment question, we would find the error harmless.  We
address the potential harm of the State's improper commitment questions by
applying Texas Rule of Appellate Procedure 44.2(b). Sanchez, 165 S.W.3d
at 713.  Under Rule 44.2(b), we focus “upon whether a biased juror—one who had
explicitly or implicitly promised to prejudge some aspect of the case because
of the State's improper questioning—actually sat on the jury.”  Id.; see also Tex. R. App. P.
44.2(b).  The ultimate harm question is whether the defendant was tried by an
impartial jury, or conversely, whether the jury or any specific juror was
“‘poisoned’ by the State's improper commitment questions on a legal issue or
fact that was important to the determination of the verdict or sentence.”  Sanchez,
165 S.W.3d at 713.

In this case, none of the prospective
jurors responded to the State’s question.  Barton failed to show that any of
the jurors were “poisoned” by the State’s question.  Accordingly, we overrule
Barton’s third issue.

Expert Testimony

In his fourth issue, Barton argues that
the State’s expert witness, Dr. Gayle Burress, substituted her judgment for
that of the jury regarding the credibility of the statements given by various
witnesses.  Regardless of whether the complained-of evidence was inadmissible,
Barton failed to object throughout Dr. Burress’s testimony.  Although Barton
initially objected to the testimony, he failed to object when the same or
similar evidence was later introduced.  A party must object each time
inadmissible evidence is offered.  Hudson v. State, 675 S.W.2d
507, 511 (Tex. Crim. App. 1984).  Because he failed to do so, we overrule
Barton’s fourth issue.

Conclusion

      Having overruled Barton’s four issues, we
affirm the judgment of the trial court.

 

BILL VANCE

Justice

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

Affirmed

Opinion
delivered and filed July 18, 2007

Do
not publish

[CR25]









[1]
Another friend testified that H.G. wrote her a note which stated that Barton
“was feeling on [H.G.] … and then he tried to make her touch his private
part.”  The friend lost the note, so it was not admitted into evidence.